# IN THE SUPREME COURT OF IOWA

No. 09–0647

Filed December 17, 2010

**STATE OF IOWA,**

    Appellee,

vs.

**DAVID JOHN HALSTEAD,**

    Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Woodbury County, Gary E. Wenell, Judge.

Defendant, challenging the validity of inconsistent jury verdicts in criminal cases, seeks further review of a decision by the court of appeals affirming his conviction for assault while participating in a felony. **DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED IN PART, SENTENCE VACATED, AND CASE REMANDED FOR RESENTENCING.**

Mark C. Smith, State Appellate Defender, Stephan J. Japuntich, Assistant State Appellate Defender, and Cory McAnelly, Student Legal Intern, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Patrick Jennings, County Attorney, and Drew H. Bockenstedt, Assistant County Attorney, for appellee.

**APPEL, Justice.**

In this case, we confront the validity of inconsistent jury verdicts in a criminal trial in which a single defendant is convicted on a compound offense that requires, as an element, a finding of guilt on a predicate offense, but is acquitted on the underlying predicate offense. The rule in the majority of jurisdictions is to ignore the inconsistency and uphold the jury verdicts. The majority rule, however, has been subject to criticism, and a minority of courts has declined to follow it.

The court of appeals applied the majority rule and upheld the verdict. We granted further review. After review of the pertinent precedents and authorities, we decline to adopt the majority rule. Pursuant to our power to supervise Iowa courts, we hold that a criminal conviction of a compound offense cannot stand when the defendant has been acquitted of the underlying predicate offense. As a result, the defendant's conviction for assault while participating in a felony is reversed, and the case is remanded to the district court for resentencing of the defendant based on his unappealed convictions.

## I. Factual and Procedural Background.

Lester Recinos lived in a group home in Sioux City, Iowa, when he became a crime victim. On August 1, 2008, Recinos failed to return to the group home by curfew. At 2:30 a.m., a group-home employee saw Recinos being pulled from a parked minivan. As Recinos fell to the ground, a man kicked and punched him. Passengers in the van ordered the attacker to take jewelry and money from Recinos. The group-home employee called the police. The ensuing investigation implicated David Halstead, allegedly a passenger in the van, in the crime.

The State charged Halstead with four criminal offenses: assault while participating in a felony; theft in the first degree, which served as

the predicate felony for assault while participating in a felony; robbery in the second degree; and conspiracy to commit a forcible felony (robbery in the second degree). A jury convicted Halstead of assault while participating in a felony and robbery in the second degree. The jury acquitted Halstead of theft in the first degree and instead found him guilty of theft in the fifth degree, a misdemeanor lesser included offense of theft in the first degree.

Halstead filed a motion for a new trial. In the motion, Halstead asserted that the jury's verdict on assault while participating in a felony, a compound felony, was inconsistent with his acquittal on the charge of theft in the first degree, the only available predicate felony under the jury instructions in the case. The trial court overruled the motion, and this appeal followed.

**II. Standard of Review.**

The parties suggest that the proper standard of review in this case is for substantial evidence. The issue in this case, however, relates primarily to a question of law regarding the consequence of a jury verdict that convicts the defendant of a compound felony yet acquits the defendant on the only predicate felony in the case as instructed by the court.[1] *See United States v. Hart*, 963 F.2d 1278, 1280 (9th Cir. 1992). To the extent constitutional issues are raised, review is de novo. *State v. Taeger*, 781 N.W.2d 560, 564 (Iowa 2010).

**III. Discussion.**

**A. Introduction.** The problem of inconsistent verdicts has plagued courts for some time. At common law, inconsistent verdicts

---

[1]The State concedes that the issue of whether an inconsistent verdict may stand has been preserved. We therefore do not address the defendant's alternate claims of ineffective assistance of counsel.

were invalid and set aside. *See* Steven T. Wax, *Inconsistent and Repugnant Verdicts in Criminal Trials*, 24 N.Y.L. Sch. L. Rev. 713, 732 (1979) [hereinafter Wax]. In the United States, however, the approach to inconsistent verdicts has varied, depending on the nature of the alleged inconsistency and the jurisdiction involved.

At the outset, it is important to note that the term "inconsistent verdicts" is often used in an imprecise manner and may include a wide variety of related, but nonetheless distinct, problems. A jury verdict may be deemed inconsistent based upon inconsistent application of facts or inconsistent application of law. For example, in a vehicular manslaughter case, the conviction of a defendant for the death of one passenger in the car but acquittal on a charge related to another passenger is "factually inconsistent." *DeSacia v. State*, 469 P.2d 369, 371, 377–78 (Alaska 1970). There is no legal flaw in the jury's verdict, but the verdicts seem inconsistent with the facts. On the other hand, the conviction of a defendant of a compound crime when he or she is acquitted on all predicate offenses is said to be "legally inconsistent." *See Price v. State*, 949 A.2d 619, 634–38 (Md. 2008) (Harrell, J., concurring); *State v. Arroyo*, 844 A.2d 163, 171 (R.I. 2004); 75B Am. Jur. 2d *Trial* § 1558, at 352–55 (2007); *see also Gonzalez v. State*, 440 So. 2d 514, 515 (Fla. Dist. Ct. App. 1983). In these cases, the jury verdict is inconsistent as a matter of law because it is impossible to convict a defendant of the compound crime without also convicting the defendant of the predicate offense.[2]

---

[2]One other category, mutually exclusive verdicts, occurs when a jury makes positive findings of fact that are mutually inconsistent. *See Hammonds v. State*, 7 So. 3d 1055, 1060 (Ala. 2008).

Some allegedly inconsistent verdicts involve a defendant in a single proceeding having multiple counts, such as a case involving compound and predicate felonies or multiple deaths due to a single act or occurrence. *See* W. E. Shipley, Annotation, *Inconsistency of Criminal Verdict with Verdict on Another Indictment or Information Tried at Same Time*, 16 A.L.R.3d 866, 868 (1967). In other cases, jury verdicts may be said to be inconsistent if multiple defendants are tried either together or separately. For instance, it may be claimed that the conviction of one defendant of conspiracy while all of the possible confederates are acquitted produces an inconsistent verdict because it takes more than one person to conspire. *See* Michelle Migdal Gee, Annotation, *Prosecution or Conviction of One Conspirator as Affected by Disposition of Case Against Coconspirators*, 19 A.L.R.4th 192, 198–204 (1983); C. T. Drechsler, Annotation, *Inconsistency of Criminal Verdicts as Between Two or More Defendants Tried Together*, 22 A.L.R.3d 717, 720–21 (1968).

This case involves a single defendant who is convicted of a compound crime and acquitted of the predicate crime in a single proceeding. Sometimes labeled in the cases as "true inconsistency" or "repugnancy," *see, e.g., Brown v. State*, 959 So. 2d 218, 220 (Fla. 2007); *People v. Bullis*, 294 N.Y.S.2d 331, 332–33 (App. Div. 1968), a jury verdict in a compound-conflict case, as will be seen below, has serious flaws. For purposes of clarity, in this opinion we will refer to the inconsistency in this case as a compound inconsistency.

Before addressing the narrow issue presented in this case, it is important to note that the question of inconsistent verdicts has sometimes been characterized as not involving constitutional issues. *See United States v. Powell*, 469 U.S. 57, 65, 105 S. Ct. 471, 477, 83 L. Ed. 2d 461, 469 (1984). As will be seen below, the question of the

validity of an inconsistent verdict, however, can be approached only with due regard to important constitutional concepts including double jeopardy, guilt beyond a reasonable doubt, and the right to a unanimous jury verdict. At a minimum, the outcome in this case is affected by strong constitutional currents.

**B. Approach of the United States Supreme Court to Compound Inconsistency in Jury Verdicts in Criminal Cases.** In *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932), the United States Supreme Court considered the question of proper disposition of a case when the jury convicted a defendant of a compound offense but acquitted the defendant on all predicate offenses. *Dunn*, 284 U.S. at 391–92, 52 S. Ct. at 190, 76 L. Ed. at 358. In *Dunn*, the government charged Dunn with "maintaining a common nuisance by keeping for sale at a specified place intoxicating liquor," "unlawful possession of intoxicating liquor," and "unlawful sale of such liquor." *Id.* at 391, 52 S. Ct. at 190, 76 L. Ed. at 358. The jury acquitted the defendant of the possession and sale counts, but convicted him of maintaining a nuisance. *Id.* at 391–92, 52 S. Ct. at 190, 76 L. Ed. at 359. As is apparent, the case involved a claim of compound inconsistency. *See id.* Nonetheless, the Supreme Court in *Dunn* upheld the conviction on the compound felony. *Id.* at 394, 52 S. Ct. at 191, 76 L. Ed. at 359. The Supreme Court offered two rationales in support of its decision.

At the outset, the *Dunn* Court noted that if the case had been tried in two separate trials, the first trial would have no res judicata effect in the second proceeding. *Id.* at 393, 52 S. Ct. at 190, 76 L. Ed. at 358–59. Therefore, the Court reasoned, there should be no res judicata effect

when the counts just happen to be part of a single indictment considered by a jury in a single proceeding. *Id.*

Next, the *Dunn* Court justified the result on another ground. According to the Court, the acquittal on the possession charge should be interpreted merely as the assumption of a power that the jury had no right to exercise, but was disposed to do so through lenity. *Id.* While recognizing that an inconsistent verdict could be based upon motivation other than lenity—for instance, as a result of compromise or of a mistake on the part of the jury—the Court reasoned that it could not speculate regarding these matters. *Id.* at 393–94, 52 S. Ct. at 190–91, 76 L. Ed. at 359. As a result, the *Dunn* Court adopted what amounted to an irrebuttable presumption that the jury was engaged in an act of lenity when it acquitted the defendant of the possession charge, even though the Court recognized that the jury verdict could have been based on other factors. *See id.*

Justice Butler dissented in *Dunn.* According to Justice Butler, the jury's determination of not guilty on the possession charge amounted to a final determination of the possession element in all charges. *Id.* at 406–07, 52 S. Ct. at 195–96, 76 L. Ed. at 365–66 (Butler, J., dissenting). Justice Butler thought the inference that the jury made a mistake was preferred over the notion that the jury assumed a power that it could not lawfully assert, namely, lenity. *Id.*

Subsequent to *Dunn,* the Supreme Court revised its res judicata doctrine. In *Ashe v. Swenson,* 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), and *Sealfron v. United States,* 332 U.S. 575, 68 S. Ct. 237, 92 L. Ed. 180 (1948), the Supreme Court concluded that a finding of fact in a prior judicial proceeding was binding in a subsequent criminal trial. *Ashe,* 397 U.S. at 443–44, 90 S. Ct. at 1194, 25 L. Ed. 2d at 475–76;

*Sealfron,* 332 U.S. at 578, 68 S. Ct. at 239, 92 L. Ed. at 184. Because the res judicata rationale in *Dunn* was undermined by subsequent legal developments, a number of lower federal courts began to drift away from strict adherence to *Dunn.* *See, e.g., United States v. Brooks,* 703 F.2d 1273, 1278–79 (11th Cir. 1983); *United States v. Bailey,* 607 F.2d 237, 245 (9th Cir. 1979); *United States v. Hannah,* 584 F.2d 27, 28–30 (3d Cir. 1978). It seemed that the law of inconsistent verdicts might be evolving away from the unqualified *Dunn* rule.

The prospect of a modification of the *Dunn* approach was put to rest in *Powell. Powell,* 469 U.S. at 69, 105 S. Ct. at 479, 83 L. Ed. 2d at 471. In *Powell,* the defendant was charged with fifteen violations of federal law, including "conspiring . . . 'to knowingly and intentionally possess with intent to distribute cocaine,' " "possession of a specific quantity of cocaine with intent to distribute," and "using the telephone in 'committing and in causing and facilitating' certain felonies—'conspiracy to possess with intent to distribute and possession with intent to distribute cocaine.' " *Id.* at 59–60, 105 S. Ct. at 474, 83 L. Ed. 2d at 465 (quoting federal indictment). The jury acquitted Powell on the first two counts of conspiracy to distribute and possession with intent to distribute, but convicted her of using the telephone in connection with these felonies. *Id.* at 60, 105 S. Ct. at 474, 83 L. Ed. 2d at 465.

The Supreme Court reaffirmed the approach in *Dunn* and upheld the verdict. *Id.* at 69, 105 S. Ct. at 479, 83 L. Ed. 2d at 471. The *Powell* Court recognized that the res judicata rationale of *Dunn* was no longer applicable. *Id.* at 64, 105 S. Ct. at 476, 83 L. Ed. 2d at 468. Nonetheless, the *Powell* Court concluded that the approach in *Dunn* remained good law. *Id.*

The first reason offered by the *Powell* Court for the continued application of the *Dunn* rule was that it was "unclear" whether the defendant was in fact harmed by the inconsistent verdict. *Id.* at 65, 105 S. Ct. at 476–77, 83 L. Ed. 2d at 468–69. While the *Powell* Court noted it was possible that the jury made an error in convicting the defendant, it was "equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Id.* Because it was "unclear whose ox has been gored," the *Powell* Court found no basis for providing the defendant with relief on appeal. *Id.* at 65, 69, 105 S. Ct. at 477, 479, 83 L. Ed. 2d at 469, 471.

Next, the *Powell* Court reasoned that individualized challenges to jury verdicts designed to ferret out the basis of the inconsistency would be "imprudent" and "unworkable." *Id.* at 66, 105 S. Ct. at 477, 83 L. Ed. 2d at 469. The *Powell* Court reasoned that any attempt to divine the reason for the inconsistent verdict would "be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Id.*

Finally, the *Powell* Court concluded that the remedial scheme afforded to defendants following a guilty verdict was sufficient protection to guard against juries that would convict out of passion or prejudice. *Id.* at 67, 105 S. Ct. at 478, 83 L. Ed. at 470. The *Powell* Court reasoned that by requiring the government to convince jurors at trial and judges on appeal of the defendant's guilt and the sufficiency of the evidence to support the verdict, a convicted defendant was sufficiently protected against juror abuse. *Id.*

The *Powell* Court emphasized, however, that its decision was not based on federal constitutional considerations, but only on its

"supervisory powers over the federal criminal process." *Id.* at 65, 105 S. Ct. at 477, 83 L. Ed. 2d at 469. Consequently, we are free to accept or reject the *Powell* approach in state criminal proceedings.

*Powell* and *Dunn,* of course, involve criminal proceedings. It is interesting to note, however, that the approach of the United States Supreme Court to inconsistent verdicts in criminal cases differs from its approach in civil cases. While the law is not entirely clear in the civil context, *see, e.g., City of Los Angeles v. Heller,* 475 U.S. 796, 804–06, 106 S. Ct. 1571, 1576–77, 89 L. Ed. 2d 806, 814–15 (1986) (Stevens, J., dissenting), it appears that the United States Supreme Court is more likely to intervene to prevent jury inconsistency in civil cases than in the criminal context. *See generally* Alexander M. Bickel, Comment, *Judge and Jury—Inconsistent Verdicts in the Federal Courts,* 63 Harv. L. Rev. 649, 654 (1950) (stating there is no civil equivalent to *Dunn* to prevent upsetting inconsistent civil verdicts) [hereinafter Bickel]; Shaun P. Martin, *Rationalizing the Irrational: The Treatment of Untenable Federal Civil Jury Verdicts,* 28 Creighton L. Rev. 683, 694–98 (1995) (discussing various measures federal courts take to cure inconsistencies).

**C. Approach of State Courts to Compound Inconsistency in Jury Verdicts in Criminal Cases.**

1. *Majority state court view regarding compound inconsistency.* The substantial majority of state courts that have considered the question of inconsistent jury verdicts in criminal cases involving compound inconsistencies have followed the approach of the United States Supreme Court in *Powell* and *Dunn. See, e.g., People v. Frye,* 898 P.2d 559, 569–70 (Colo. 1995); *People v. Jones,* 797 N.E.2d 640, 644–47 (Ill. 2003); *Beattie v. State,* 924 N.E.2d 643, 649 (Ind. 2010); *State v. Brown,* 565 A.2d 1035, 1039–40 (N.H. 1989). These state courts

generally break no new ground but restate the rule and reasoning in *Dunn* and *Powell*. The fact that a marked majority of state court cases adopt *Dunn* and *Powell*, of course, is not determinative on the Iowa law question presented in this case as the persuasiveness of authority is not determined by the pound, but by the quality of the analysis.

2. *Minority state court view regarding compound inconsistency.* Several state courts have elected not to follow the approach of the United States Supreme Court in *Dunn* and *Powell*. A review of cases in the minority state court jurisdictions is helpful in identifying some of the considerations that may have a bearing on the outcome in this case.

More than a decade prior to *Powell*, the Alaska Supreme Court decided *DeSacia*. *DeSacia*, 469 P.2d at 381. Unlike this case, *DeSacia* involved a factual inconsistency in which a defendant charged with two counts of manslaughter—one count for each of two victims killed in a car accident—was convicted on one count but acquitted on another. *See id.* at 370. The *DeSacia* court recognized that the res judicata rationale of *Dunn* was no longer good law. *Id.* at 375. With respect to the presumption of lenity, the *DeSacia* court emphasized:

> [T]he truth is simply that we do not know, nor do we have any way of telling, how many inconsistent verdicts are attributable to feelings of leniency, to compromise, or, for that matter, to outright confusion on the part of the jury.

*Id.* at 377. Rejecting the presumption of lenity in *Dunn,* the *DeSacia* court held that an inconsistent verdict was infected with legal error and could not be affirmed. *Id.* at 378.

With respect to remedy, however, the *DeSacia* court did not provide the defendant with an unqualified victory. The *DeSacia* court recognized that under double-jeopardy principles, the defendant could not be retried on the charge for which he was acquitted. *Id.* at 379. The *DeSacia*

court, however, held that the defendant could be retried on the charge that resulted in a conviction. *Id.* at 381. The *DeSacia* court reasoned that double jeopardy did not apply and that principles of collateral estoppel did not bar retrial on the ground that such a result would be unfair to the state. *Id.* at 379–81.

A decade after *DeSacia*, the New York Court of Appeals decided *People v. Tucker*, 431 N.E.2d 617 (N.Y. 1981). In *Tucker*, the court considered a case in which a jury convicted the defendant on two counts of robbery and one count of possession of a loaded gun, but acquitted him on two other counts of robbery. *Tucker*, 431 N.E.2d at 617. The *Tucker* court affirmed the convictions on the ground that the verdicts were not legally inconsistent. *Id.* at 620–21. That court observed that reversal on grounds of inconsistent verdicts is appropriate only if "acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered." *Id.* at 619. The *Tucker* court emphasized that the inquiry necessary to determine whether verdicts were legally inconsistent, and therefore flawed, did not require inquiry into the jury process but only an objective analysis of the jury charge to ascertain if there was an irreconcilable conflict. *Id.*

In *Brown*, the Florida Supreme Court followed the approach outlined in *Tucker* in considering whether a conviction of felony murder could stand when the defendant was acquitted of the felonies upon which the felony murder was based. *Brown*, 959 So. 2d at 219–20. The court concluded that the felony-murder conviction could not stand. *Id.* at 221, 223. The court explained that verdicts " 'in which an acquittal on one count negates a necessary element for conviction on another count' " were not tolerated in Florida courts. *Id.* at 220 (quoting *Gonzalez*, 440

So. 2d at 515). The *Brown* majority also reasoned that the State, not the defendant, bears the burden "of ensuring parallel verdict forms for legally interlocking counts." *Id.* at 223.

Most recently, the Supreme Court of Maryland has considered the problems posed by inconsistent verdicts. In *Price v. State*, 949 A.2d 619 (Md. 2008), a jury found the defendant not guilty on all drug-trafficking charges, but found him guilty of possessing a firearm "during and in relation to a drug-trafficking crime." *Price*, 949 A.2d at 622. The Maryland Supreme Court, finding the verdicts inconsistent, concluded that the guilty verdict was infected with legal error and could not be sustained. *Id.* at 630.

In reaching its conclusion, the court in *Price* noted that in civil cases, Maryland law did not tolerate inconsistent verdicts. *Id.* at 628–29. If inconsistent verdicts were not tolerated in the civil context, the *Price* court observed, the case was even stronger in the context of criminal law in which the law affords greater procedural protections for a defendant than is given to either side of a civil trial. *Id.* at 630.

In sum, the majority of state cases simply adopt the approach of *Dunn* and *Powell,* but a significant minority distinguishes between factual and legal inconsistency and regard inconsistencies resulting from conviction of a compound felony and acquittal on the underlying predicate felony as fatally flawed.

**D. Iowa Case Law Related to the Issue of Compound Inconsistency in Jury Verdicts in Criminal Cases.** This court has had only one occasion to consider a question involving a claim of compound inconsistency in a jury verdict in a criminal case. In *State v. Fintel*, 689 N.W.2d 95 (Iowa 2004), the defendant was charged with conspiracy to manufacture a controlled substance and manufacturing a controlled

substance. *Fintel*, 689 N.W.2d at 100. The jury acquitted the defendant on the manufacturing charge, but convicted him on the conspiracy charge. *Id.* at 100. The defendant appealed, claiming that the inconsistent jury verdict required reversal. *Id.*

We affirmed the conspiracy conviction. *Id.* at 101. We noted that the case did not involve a true inconsistency as one could conspire to manufacture a controlled substance without completing the offense of manufacturing. *Id.* at 97, 101. In its analysis, however, the court did not rely upon *Powell* or *Dunn*, but instead referred to *Hoffman v. National Medical Enterprises, Inc.*, 442 N.W.2d 123, 126–27 (Iowa 1989), a civil matter often cited for the proposition that jury consistency is required. *See id.* at 101. The *Fintel* court noted that the test for inconsistency in civil cases asks whether the verdict is "so logically and legally inconsistent as to be irreconcilable within the context of the case." *Id.*

*Fintel* does not control the outcome here. While *Fintel* suggestively employed the standard used in civil cases for determining inconsistency, no inconsistency was found under the civil standard. *See id.* It was, therefore, not necessary to determine whether a defendant in a criminal case faced a higher hurdle to obtain relief on inconsistency grounds than in a civil case. *See id.* Further, even if a verdict in a criminal case was found to be inconsistent, the issue of appropriate remedy was not addressed in *Fintel* and remains an open question.[3] *See id.*

While the standards in a civil case for dealing with inconsistent verdicts are not necessarily determinative in this criminal case, they may

---

[3]The Iowa Court of Appeals has, on at least two occasions, considered the question of the remedy for inconsistent jury verdicts in a criminal case. In *State v. Pearson*, 547 N.W.2d 236, 241 (Iowa Ct. App. 1996), the court said that an inconsistency does not require reversal if the inconsistency resulted from the jury's exercise of lenity. In *State v. Hernandez*, 538 N.W.2d 884, 889 (Iowa Ct. App. 1995), the court adopted the approach of *Dunn* and *Powell*.

nonetheless be instructive. *See State v. Mumford*, 338 N.W.2d 366, 370–71 (Iowa 1983). Iowa Rule of Civil Procedure 1.934 governs treatment of inconsistent verdicts in civil cases. Of particular relevance is a provision precluding the court from ordering judgment when special interrogatories are inconsistent with each other and at least one special interrogatory is inconsistent with the general verdict. *See* Iowa R. Civ. P. 1.934. When this occurs, the court may send the jury back for further deliberation or order a new trial. *Id.* Thus, in a civil case, a legally inconsistent jury verdict in a multiple-count case cannot establish the basis of a civil judgment. *See Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609, 614 (Iowa 2006) (concluding that, once the jury is discharged, inconsistent verdicts in a civil case lead to reversal of judgment and remand for a new trial).

**E. Academic Commentary on Compound Inconsistent Jury Verdicts in Criminal Cases.** There is a body of academic commentary on the question of proper treatment of inconsistent verdicts in criminal cases generally. There have been a number of somewhat dated pieces that tend to support the Supreme Court's approach. *See, e.g.*, Bickel, 63 Harv. L. Rev. at 651–52 (1950); Chad W. Coulter, Comment, *The Unnecessary Rule of Consistency in Conspiracy Trials*, 135 U. Pa. L. Rev. 223, 225–26 (1986) [hereinafter Coulter]. These commentators tend to emphasize the sanctity of juries in our system of criminal justice and the undesirability of seeking to determine the underlying cause of inconsistency in jury verdicts. Bickel, 63 Harv. L. Rev. at 651 (characterizing the review of a jury verdict as a radical encroachment on the province of the jury); Coulter, 135 U. Pa. L. Rev. at 236–37 ("The *Dunn* case represents a practical and just compromise between the 'jury's role in seeing that the individual gets justice with mercy' and 'the

important federal interest in the enforcement of the criminal law.'" (quoting Bickel, 63 Harv. L. Rev. at 655 (first quote); *Standefer v. United States*, 447 U.S. 10, 24, 100 S. Ct. 1999, 2008, 64 L. Ed. 2d 689, 700 (1980) (second quote)).

More recent commentary, however, has been more critical. The leading commentator has characterized the Supreme Court's approach to inconsistent verdicts as "distressing." *See* Eric L. Muller, *The Hobgoblin of Little Minds?  Our Foolish Law of Inconsistent Verdicts*, 111 Harv. L. Rev. 771, 834 (1998) [hereinafter Muller]. According to this authority, while we cannot do the equivalent of throwing open the hood and looking at the engine of jury deliberations, we should nonetheless not tolerate obvious jury error. *Id.* The commentator proposes a number of possible solutions to the general problem of inconsistent jury verdicts, including harmless error analysis, refusal to accept an inconsistent verdict, and retrial at the option of the defendant. *Id.* at 821–34.

Another prominent academic has observed that the message in *Dunn* is, it is "[b]etter that ten innocent defendants be convicted than that ten guilty defendants be denied the boon of unlawful jury nullification." Albert W. Alschuler, *The Supreme Court and the Jury:  Voir Dire Peremptory Challenges, and the Review of Jury Verdicts*, 56 U. Chi. L. Rev. 153, 213 (1989) [hereinafter Alschuler]. The commentary questions a rationale in *Powell*—namely, that the government would have no recourse under double-jeopardy principles if the inconsistent guilty verdict were vacated—as imposing an improper penalty for application of double-jeopardy principles. *Id.* at 213. Further, it is suggested that it makes no sense to impose extensive and cumbersome front-end controls on the trial process and then have no controls on the back end when the jury produces an inconsistent verdict. *Id.* at 154–55, 229.

A third academic critic characterizes as "surprising" the notion in *Dunn* that a government-sanctioned decision maker is entitled to " 'indulge' in 'carelessness' and other 'vagaries.' "  Andrew D. Leipold, *Rethinking Jury Nullification*, 82 Va. L. Rev. 253, 280 (1996) (quoting *United States v. Dotterweich*, 320 U.S. 277, 279, 64 S. Ct. 134, 135, 88 L. Ed. 48, 50–51 (1943)).  The critic also observes that the approach in *Dunn* deprives the defendant of valuable evidence "that the jury failed to find proof of each element of the crime beyond a reasonable doubt, thereby increasing the risk of an erroneous conviction," and that the potential for a compromise verdict under *Dunn* is "particularly troublesome."  *Id.* at 279 n.99, 280.

These more recent critics find a foundation in an older article written by a prosecutor, Steven Wax.  Wax, 24 N.Y.L. Sch. L. Rev. at 738.  In the article, Wax asserts that a strong argument can be made that inconsistent verdicts are incompatible with the notion of guilt beyond a reasonable doubt.  *Id.*  Like the minority of state courts, Wax notes that "[t]he assumption by the proponents of the *Dunn* position that most inconsistent verdicts are benign acts on the jury's part is just that—an assumption."  *Id.* at 739.  What also may be at work, according to Wax, includes confusion, compromise, enforcement of public safety, misunderstanding of a charge, or what Wax calls "the gestalt perspective."  *Id.*  Wax thus suggests that, when an acquittal of one charge is conclusive as to an element which is necessary to conviction on another charge, the conviction should be reversed.  *Id.* at 740.

In sum, while the academic literature on inconsistent verdicts is not extensive and is mixed in its conclusions, a number of observers regard *Dunn* and *Powell* as flawed, particularly in the context of legal

inconsistency caused by conviction of a compound felony and acquittal of the potential underlying predicate felony.

**F. Determination of Proper Approach to Compound Inconsistent Jury Verdicts Under Iowa Law.**

1. *Validity of jury verdict involving compound inconsistency.* After review of the applicable precedents and authorities, we decline to follow the approach of *Dunn* and *Powell* and conclude that, in a case involving conviction of a compound felony when the defendant is acquitted of the underlying predicate crime, the conviction cannot stand. We reach our conclusion for several reasons.

If all inconsistent verdicts were the result of lenity with respect to the acquittals, and rationality with respect to the convictions, the approach in *Dunn* and *Powell* would make sense. But, we think it obvious that this is not the case. At the outset, it is equally possible that an inconsistent verdict is the product of animus toward the defendant rather than lenity. *See* Muller, 111 Harv. L. Rev. at 798, 834. The presumption of lenity seems particularly doubtful if the jury convicts a defendant of the more serious component offense but acquits the defendant on predicate felonies. Further, aside from the animus-lenity coin, the inconsistent verdict may be a result of mistake, confusion, or compromise. *See DeSacia*, 469 P.2d at 377.

Because we do not accept the presumption of lenity in cases involving inconsistent verdicts, we place greater weight than *Powell* and *Dunn* on the lack of reliability of jury verdicts when compound inconsistency is present. The purpose of our criminal justice system is to find the truth. When a jury convicts a defendant of a compound offense, but acquits the defendant on a predicate offense, our confidence in the outcome of the trial is undermined.

In constitutional terms, a jury verdict involving compound inconsistency insults the basic due process requirement that guilt must be proved beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1072, 25 L. Ed. 2d 368, 375 (1970). When a jury returns a compound inconsistency, a legal error has occurred. There is a substantial possibility that the jury has simply made an error, engaged in compromise, or engaged in some other process that is inconsistent with the notion of guilt beyond a reasonable doubt.

Finally, we are concerned about the perceptions of the criminal justice system when inconsistent verdicts are allowed to stand. We are concerned that allowing a potentially long prison term arising from a compound felony to stand when a defendant has been found not guilty of predicate offenses will have a corrosive effect on confidence in the criminal justice system. When liberty is at stake, we do not think a shrug of the judicial shoulders is a sufficient response to an irrational conclusion. We are not playing legal horseshoes where close enough is sufficient. It is difficult to understand why we have a detailed trial procedure, where the forum is elaborate and carefully regulated, and then simply give up when the jury confounds us. *See* Alschuler, 56 U. Chi. L. Rev. at 154, 229–33; *cf.* Richard L. Lippke, *The Case for Reasoned Criminal Trial Verdicts*, 22 Can. J. L. & Jurisprudence 313, 318–19 (2009). It is also difficult to justify that we would afford less protection in a criminal matter than in a civil matter involving money damages. *See Price*, 949 A.2d at 626–30.

In departing from *Dunn* and *Powell* in this case, we do not open a Pandora's box by probing into the sanctity of jury deliberations. Our analysis focuses solely on the legal impossibility of convicting a defendant of a compound crime while at the same time acquitting the

defendant of predicate crimes. Making such a legal determination does not require the court to engage in highly speculative inquiry into the nature of the jury deliberations. *See Tucker*, 431 N.E.2d at 619–21 (refusing to speculate about jury motivation, but looking to objective facts to assess whether the jury verdict is self-contradictory). We focus solely on the elements of the crime, the jury verdicts, and the instructions in the case.

We also accept the notion that any potential remedy should be available only when the jury verdicts are truly inconsistent or irreconcilable. A reviewing court must carefully examine the pleadings and the instructions to ensure that the jury verdicts are so inconsistent that they must be set aside. *See, e.g.*, *Cochran v. State*, 220 S.E.2d 477, 478 (Ga. Ct. App. 1975) (emphasizing the need to carefully examine crimes to determine whether they contain different elements, thereby showing whether the verdicts are truly inconsistent or repugnant); *Commonwealth v. Austin*, 906 A.2d 1213, 1219–21 (Pa. Super. Ct. 2006) (discussing how apparently inconsistent verdicts may not be legally inconsistent).

Applying these principles to the case at hand, we find that the jury verdicts in this case are truly inconsistent. A jury simply could not convict Halstead of the compound crime of assault while participating in a felony without finding him also guilty of the predicate felony offense of theft in the first degree.[4] There is simply no exit from this air-tight conundrum. As a result, Halstead's conviction of the compound felony in this case must be reversed.

---

[4]The jury instructions at Halstead's trial provided that only theft in the first degree could serve as the predicate offense for the assault while participating in a felony count. Due to this, the State conceded at oral argument that Halstead's conviction for second-degree robbery could not serve as the predicate offense for the compound felony.

2. *Application of double jeopardy/collateral estoppel to potential retrial.* Having determined that the compound conviction in this case cannot stand, we next confront whether the defendant may be retried on remand.[5] It is clear under double-jeopardy principles that the defendant may not be tried on the offenses for which he was acquitted. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656, 664–65 (1969). The question arises, however, whether Halstead may nonetheless be subject to retrial on the charge for which he was found guilty, namely, the compound felony of assault while participating in a felony. *Compare DeSacia,* 469 P.2d at 379–81 (allowing retrial on offense when conviction was obtained in a prior trial), *with Smith v. State,* 985 A.2d 1204, 1215 n.10 (Md. 2009) (citing *Ferrell v. State,* 567 A.2d 937, 940 (Md. 1990)) (refusing to allow retrial on double-jeopardy grounds).

We conclude that the defendant may not be retried on the underlying felony. The Supreme Court has made it clear that the doctrine of collateral estoppel applies against the government as part of double jeopardy. *Ashe,* 397 U.S. at 442–46, 90 S. Ct. at 1193–95, 25 L. Ed. 2d at 474–76. Double-jeopardy doctrine prohibits postacquittal appeal by the government that, if successful, would result in a second trial or would necessitate further proceedings " ' "devoted to the resolution of factual issues going to the elements of the offense charged" ' " before a second trier of fact. *Smalis v. Pennsylvania,* 476 U.S. 140, 145–46, 106 S. Ct. 1745, 1749, 90 L. Ed. 2d 116, 122 (1986)

---

[5]At the trial in this case, there was no effort to resolve the inconsistent verdict. We therefore have no occasion to consider whether the trial court may ask a jury to reconsider an inconsistent verdict before the jury is discharged. *See Mumford,* 338 N.W.2d at 369–72; *State v. Peters,* 855 S.W.2d 345, 349–50 (Mo. 1993); *see also Heinze v. State,* 42 A.2d 128, 130 (Md. 1945).

(quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 570, 97 S. Ct. 1349, 1354, 51 L. Ed. 2d 642, 650 (1977)). As is apparent from *Ashe* and *Smalis*, the doctrine of collateral estoppel is part of double-jeopardy doctrine. Under collateral estoppel, a conclusive determination of a jury cannot be retried in a separate successive proceeding. Here, it is clear that the jury has acquitted the defendant of the underlying predicate offenses. We find that collateral estoppel bars any subsequent retrial on the compound felony charge because the factual issues of guilt on the predicate felonies have been authoritatively determined.

### IV. Conclusion.

For the above reasons, Halstead's conviction of assault while participating in a felony is reversed, and his sentence is vacated. The matter is remanded to the district court for entry of a judgment of acquittal on the compound felony and for resentencing as a result of Halstead's unchallenged convictions on theft in the fifth degree and robbery in the second degree.

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED IN PART, SENTENCE VACATED, AND CASE REMANDED FOR RESENTENCING.**