# IN THE COURT OF APPEALS OF IOWA

No. 3-1247 / 13-0349
Filed March 12, 2014

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**DAVID JAY SPONSLER,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lucas County, David L. Christensen, Judge.

A defendant appeals from his convictions for assault on a peace office and second-degree harassment. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Triick, Assistant Attorney General, and Paul M. Goldsmith, County Attorney, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**MULLINS, J**

David Sponsler appeals from the district court, arguing there was insufficient evidence to support his convictions for assault on a peace officer (Iowa Code sections 708.1(2) and 708.3A(4) (2011)) and harassment in the second degree (Iowa Code sections 708.7(1)(b) and 708.7(3)). The State charged Sponsler with two counts of assaulting two Lucas County Sheriff Deputies—count one referenced Deputy Brett Tharp and count two referenced Deputy Clint Neis. The jury acquitted Sponsler of assaulting Tharp and convicted him of assaulting Neis.

> We review challenges to the sufficiency of the evidence for correction of errors at law. If a verdict is supported by substantial evidence, we will uphold a finding of guilt. Substantial evidence is that upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. The State must prove every fact necessary to constitute the crime with which the defendant is charged. The evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture. In conducting our review, we consider all the evidence in the record, that which is favorable as well as unfavorable to the verdict, and view the evidence in the light most favorable to the State.

*State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011) (internal citations and quotation marks omitted).

## I.  Assault Against A Peace Officer.[1]

Sponsler argues there was insufficient evidence to show he intended to place Neis in fear of immediate physical contact or that he had the apparent ability to do the act.  Tharp was approaching Sponsler at his residence to discuss threatening statements Sponsler had made earlier that day to Lucas County Attorney Paul Goldsmith.  As Tharp drove up to the house, Sponsler was seated on a couch in the front yard.  Upon seeing an approaching police vehicle, Sponsler got up and ran into the house.  Tharp stopped in front of the house and called Neis, who arrived less than a minute later to assist.  Tharp believed he already had sufficient cause to arrest Sponsler for harassment of Goldsmith.[2] Both deputies were in the front yard approaching the house when Sponsler exited the front door and stood before them on the porch.  Tharp stood closest to Sponsler, slightly in front of and to the left of Neis.  Sponsler was about fifteen feet away from the deputies.

Tharp testified Sponsler appeared very agitated, was flexing the muscles in his arms, pacing back and forth, staring at them, and talking on his phone. Neis further testified Sponsler was raising his arms and clenching his fists as

---

[1] The jury instruction required the jurors to find:
1.  On or about the 6th day of June, 2012, the defendant did an act which was intended to place Clint Neis in fear of an immediate physical contact which would have been painful, injurious, insulting, or offensive to him.
2.  The defendant had the apparent ability to do the act.
3.  The defendant knew that Clint Neis was a peace officer.

The jury instruction for count I, assault on peace officer Brett Tharp, was identical except for the substitution of his name.

[2] At the time of the trial, that charge also was pending.

though taking a fighting stance, grinding his teeth, and staring at them threateningly. They asked Sponsler to hang up and talk to them, attempting to calm him down. Sponsler continued talking incoherently and obscenely. The deputies were concerned for their safety and believed Sponsler was under the influence of a substance or suffering from poor mental health. Tharp testified Sponsler then raised his fists in a fighting posture and made several motions at the deputies like lunges. Tharp stated, "I believed he was planning on charging us[.]" Neis also stated Sponsler balled his fists in a fighting stance and began lunging at them. Neis further testified the predominant forward motion of Sponsler's lunge was in his upper body but his feet remained in the same position. Nonetheless Neis testified he took a step backward in response to put distance between himself and Sponsler and attempted to take a defensive stance. In contrast, Tharp testified his response was to step forward and reach for his Taser. On seeing this, Sponsler turned around and ran back into the house. Tharp chased him and deployed the Taser, and Sponsler fell to the floor.

"[I]ntent is seldom subject to direct proof[.]" *State v. Mayberry*, 411 N.W.2d 677, 682 (Iowa 1987) (overruled on other grounds by *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006)). "[D]efendants will ordinarily be viewed as intending the natural and probable consequences which ordinarily follow from their voluntary acts." *Id.* Sponsler argues he did not intend to place the officers in fear of imminent physical contact because he had been talking on the phone and did not move his feet during the lunges. The deputies' testimony shows that Sponsler's agitated demeanor and threatening conduct were intended to place

the deputies in fear of imminent physical contact, whether or not such contact was made. Sponsler argues he had no ability to do the act threatened. However, he was separated from the deputies by only about fifteen feet with no obstacles or restraints between them.

We find the evidence sufficient for a rational finder of fact to conclude Sponsler was guilty of assault on a peace officer. Therefore, substantial evidence supports the jury's conclusion finding Sponsler guilty, and we uphold the verdict.

Sponsler complains the jury found him guilty of assaulting Neis but not Tharp, although Tharp was standing closer, and argues this shows there was insufficient evidence to convict him on either count. Iowa courts ordinarily will not overturn inconsistent verdicts unless they are "so logically and legally inconsistent as to be irreconcilable within the context of the case." *State v. Flintel*, 689 N.W.2d 95, 100 (Iowa 2004). In *State v. Halstead*, 791 N.W.2d 805, 814 (Iowa 2010), our supreme court found, "[I]n a case involving conviction of a compound felony[,] when the defendant is acquitted of the underlying predicate crime, the conviction cannot stand." The supreme court carefully limited its ruling to the "legal impossibility of convicting a defendant of a compound crime while at the same time acquitting the defendant of predicate crimes." *Halstead*, 791 N.W.2d at 815. We do not know why the jury convicted Sponsler of assaulting Neis but not Tharp, nor will we speculate. *See id.* However, this case does not involve a conviction for a compound offense with an acquittal for one of its

predicates. Nor are the verdicts "so logically and legally inconsistent as to be irreconcilable[.]" See *Flintel*, 689 N.W.2d at 100.

## II. Harassment in the Second Degree.[3]

Sponsler next contends there was insufficient evidence for his conviction for harassment in the second degree. He argues he acted with a legitimate purpose and in a manner not likely to cause annoyance or harm. After Sponsler was incapacitated by the Taser, the deputies placed him in handcuffs and called an ambulance to transport him to the hospital for a mental health evaluation. When the ambulance arrived, the deputies placed Sponsler in the back, and the paramedics checked on him. During this time, Neis was closest to Sponsler, and Sponsler remained cooperative. The owner of the residence with whom Sponsler lived, Patricia Schultz, then arrived at the scene and began speaking with Sponsler, who was still in the ambulance. Tharp stated, "[S]he became agitated and started making Mr. Sponsler more agitated, so we asked her to leave." Tharp testified that Neis placed his hand on Schultz's arm, and Sponsler "began to yell obscenities[.]" He stated Sponsler said to Neis, "I'm going to kick your ass." Neis testified he tapped Schultz on the shoulder to get her attention and to ask her to leave the scene. She pulled away and began yelling obscenities at Neis. Neis stated Sponsler approached the opening of the

---

[3] The jury instruction required the jurors to find:
1. On or about the 6th day of June, 2012, the defendant communicated with Clint Neis, without a legitimate purpose, in a manner likely to cause him annoyance or harm.
2. The defendant communicated a threat to commit bodily injury.
3. The defendant did so with the specific intent to intimidate, annoy, or alarm Clint Neis.

ambulance door and "threatened to assault me if I touched Patricia Schultz again." Neis could not recall the exact words Sponsler used. Schultz testified Neis "shoved" her. She also stated Sponsler said, "Keep your hands off of her," but did not say anything more.

Sponsler argues he spoke with a legitimate purpose of communicating that he did not want Neis to touch Schultz and the harassment statute restrained his exercise of free speech. In *State v. Fratzke*, 446 N.W.2d 781, 784 (Iowa 1989), our supreme court found the harassment statute does not violate free speech when it restrains "fighting words," defined as "personally abusive epithets which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Further, "[t]he *Fratzke* court recognized that the harassment statute contains a 'constitutional safety valve' so as not to punish mere unpopular speech." *State v. Button*, 622 N.W.2d 480, 485 (Iowa 2001) (internal citation omitted). "That safety valve is the requirement that the threat be 'without legitimate purpose' to be actionable as harassment." *Id.* Even if Sponsler had a legitimate purpose in defending his friend by stating "keep your hands off of her," a rational trier of fact could find the threatening statement, "I'm going to kick your ass," had no legitimate purpose in these circumstances.

Sponsler further argues the statement was made in a manner not likely to cause annoyance or harm. He states he was "simply communicating his displeasure" at Neis's statement to Schultz. He further asserts, "[n]or was there a danger of harm" because Sponsler was handcuffed and could not carry out an

assault.  However, Sponsler made this threatening statement in a state of agitation while the deputies were attempting to dispatch him to the hospital.

We find that a rational trier of fact could find Sponsler made a communication of intent to cause bodily injury to Neis, in a manner likely to cause Neis annoyance, and did so with specific intent to intimidate, annoy, or alarm Neis.  Thus, substantial evidence supports the jury's conclusion finding Sponsler guilty of harassment, and we uphold the verdict.

**III.    Conclusion.**

The evidence is sufficient for a rational trier of fact to find Sponsler intended to place Neis in fear of imminent physical contact and Sponsler had the apparent ability to do the assaultive act.  The evidence is also sufficient to show, by threatening Neis physically, Sponsler acted without a legitimate purpose and in a manner likely to cause Neis annoyance or harm.  Consequently, the jury verdicts are supported by substantial evidence, and we uphold them.  We uphold the verdicts notwithstanding the alleged inconsistency because this case does not involve the logical and legal inconsistency contemplated in *Halstead*.  We affirm.

**AFFIRMED.**