# IN THE COURT OF APPEALS OF IOWA

No. 21-0434
Filed September 21, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JASON ROBERT SASSMAN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.

A defendant appeals his conviction for second-degree murder. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Bower, C.J., Tabor, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**TABOR, Judge.**

It was a Sunday morning in early April 2020. Lauren Rice was walking her dog, Holiday, through the Beaverdale neighborhood of Des Moines. Abruptly their lives were cut short by a speeding truck. The State charged the truck driver, Jason Sassman, with first-degree murder and animal abuse. A jury convicted Sassman of second-degree murder and acquitted him on the charge of animal abuse. On appeal, he contends that those verdicts are inconsistent. He also challenges the admission of autopsy photographs and the State's proof of malice aforethought. Finding no inconsistency in the verdicts, no abuse of discretion in the evidentiary rulings, and ample evidence of malice, we affirm.

## I.    Facts and Prior Proceedings

About one month into the COVID-19 pandemic, Sassman faced mounting pressures. A host of circumstances had "derailed" his efforts to manage his dual diagnosis of bipolar disorder and methamphetamine abuse, according to a defense expert. His group counseling was cancelled. He missed an every-other-week injection of antipsychotic medication. Then his wife was incarcerated, and his children were placed in foster care. After an unauthorized visit with his children, Sassman ingested a large quantity of methamphetamine. The next morning, he drove his truck through Beaverdale at upwards of seventy miles per hour.

That speeding truck captured the attention of several witnesses. One of those witnesses, a runner, was looking south down Beaver Avenue when she saw Rice on the sidewalk near the neighborhood grocery store. The runner planned to cross the street. But that plan changed when she heard loud sounds: "Metal clanking. . . . Engine revving. Wood splitting." Looking up, she saw "a truck pulling

a trailer hop up on the curb and drive through some yards." In its wake, a wooden utility pole was sheered in half. The runner "stood there in shock," trying to process the bizarre scene and watched "debris flying everywhere." As the driver veered in her direction, the runner hid behind a utility pole. After the truck reentered the roadway, the runner watched it drive by and then turned north to follow. She kept her eye on the truck until she saw it was "disabled on Hickman Road." The runner flagged down another pedestrian and borrowed his cell phone to call 911. The operator advised her to meet with police by the grocery store. When she did, she realized there was a body in the roadway.

A second witness, a customer leaving the grocery store, also heard a racket and saw the truck go over the curb, back into the street. A third witness was making coffee in her home when she "heard a bunch of noise," looked out the window, and saw a speeding truck "taking down a street sign" and "sparks flying." After the truck passed, the neighbor spotted a dead dog right in front of her house. Then she looked to the side and saw Rice's body too.

When emergency responders got to the scene, they knew there was nothing they could do to save Rice. Later, the medical examiner determined that she died of "multiple blunt force injuries."

A few blocks north, Des Moines police found Sassman outside his truck, which he abandoned at the intersection of Beaver and Hickman. Sassman hopped onto the grill of an approaching firetruck, hands in the air, pressing his face close to its windshield. Officer Mike Delaney thought Sassman "looked maybe paranoid, maybe scared." The officer ordered him to the ground. Sassman complied, and he was handcuffed. Once in custody, Sassman delivered a "rambling" soliloquy:

"I want to be a cop." "I fucked that truck up." "I didn't have no gun." "I didn't have no meth either." Hearing those disjointed rants, Officer Delaney believed that Sassman was under the influence of a chemical substance. That view was shared by Officer Andrew Wierck who spoke with Sassman after his arrest. Officer Wierck recalled that Sassman had a gash on his forehead and "wasn't making a lot of sense." In the officer's opinion, Sassman appeared "pretty hyper or seemed to be amped up."

Back at the intersection, smoke billowed from Sassman's truck, which had heavy front-end damage. A later examination of its undercarriage found "blood and tissue within the damage." Inside the cab, police found a spoon with brown residue and a burn mark, suggesting recent drug use. Crime scene investigators detected "no evidence of braking or skidding" before or after the truck's collision with Rice and Holiday. They estimated that Sassman dragged Rice's body over ninety feet from the point of impact.

After bringing Sassman to the station, police conducted field sobriety tests and took a blood sample. The sample showed high levels of methamphetamine, as well as THC, in his system. Police also interviewed him twice. During those sessions, Sassman engaged in a long, largely nonsensical monologue. But at points, he acknowledged hitting Rice on purpose. For example, Sassman said: "[S]he turned, looked right at me, and I blasted her." He also suggested she "wanted to end it for herself" and he decided, "fuck it, I'm gonna run that bitch over by example, fuck 'em, I'm going to speed bump that bitch."

About one month later, the State charged Sassman with premeditated murder, a class "A" felony, in the death of Rice and animal abuse, an aggravated

misdemeanor, for killing her dog, Holiday. *See* Iowa Code §§ 707.2(1), 717B.2 (2020). Before trial, the defense moved in limine to exclude Sassman's criminal history and testimony that "the incident occurred during Lauren Rice's first walk outside after self-quarantining." The defense also sought to exclude twenty photographs from Rice's autopsy. The district court granted the defense request to exclude Sassman's criminal history and any reference to Rice's "first walk outside" since the pandemic started. As for the autopsy photographs, the court found those images were "undoubtedly gruesome," but admissible to show Sassman's intent.

The defense also filed notices of diminished capacity and intoxication under Iowa Rule of Criminal Procedure 2.11(11)(b)(1) and (2). After a four-day trial, the jury acquitted Sassman of animal abuse and first-degree murder, but returned a guilty verdict on the lesser offense of second-degree murder. Sassman now appeals that conviction.

## II.    Analysis

Sassman contends the jury's verdict convicting him of second-degree murder contradicted its verdict acquitting him of animal abuse. He argues that it was "logically incompatible" for the jurors to find him responsible for killing Rice, but not for the death of her dog.

### 1. Error Preservation

Sassman did not object to the allegedly inconsistent verdicts until his motion for a new trial. The State insists he was too late. To preserve error, in the State's view, Sassman had to raise the issue as soon as the jury returned its verdicts, so the district court would have the option of "sending the matter back to the jury for

further deliberation." *See State v. Merrett*, 842 N.W.2d 266, 273 (Iowa 2014). Sassman counters that the procedure he used "appears to suffice as an error preservation tool." *See State v. Komeh,* No. 19-0477, 2020 WL 5944218, at *1–2 (Iowa Ct. App. Oct. 7, 2020) (ruling on inconsistent verdict claim although raised for the first time in a post-trial motion). He also notes that the prosecutors resisted his motion for new trial on its merits. Given those competing positions, we opt to bypass the error-preservation issue and address the claim on its merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) ("We choose to pass Taylor's serious preservation-of-error problems and affirm on the merits.").

**2. Merits**

Before delving into the merits, we note the hybrid standard of review that our supreme court has adopted for inconsistent-verdict claims. *See Merrett*, 842 N.W.2d at 272–73 ("The consequence of a potentially inconsistent jury verdict is a question of law, and accordingly, our review is de novo."). We proceed under that de novo review because an inconsistent verdict implicates several constitutional rights. *State v. Halstead*, 791 N.W.2d 805, 808 (Iowa 2010) (listing double jeopardy, guilt beyond a reasonable doubt, and the right to a unanimous jury verdict).

**A. Should the district court have granted a new trial based on inconsistent verdicts?**

Turning to the merits, we start with the delineation between factual and legal inconsistencies.

> [I]n a vehicular manslaughter case, the conviction of a defendant for the death of one passenger in the car but acquittal on a charge related to another passenger is "factually inconsistent." There is no legal flaw in the jury's verdict, but the verdicts seem inconsistent with

the facts. On the other hand, the conviction of a defendant of a compound crime when he or she is acquitted on all predicate offenses is said to be "legally inconsistent." In these cases, the jury verdict is inconsistent as a matter of law because it is impossible to convict a defendant of the compound crime without also convicting the defendant of the predicate offense.

*Id.* at 807 (internal citations omitted). Only a legally inconsistent verdict requires reversal. *Id.* at 816.

But Sassman does not assert the verdicts were "legally inconsistent" or "inconsistent as a matter of law." Instead, he considers them "logically inconsistent" since the jury "found Sassman responsible for the death of Lauren Rice" but not responsible for the death of her dog though both deaths were "caused by the act of Sassman striking them with his vehicle."

To counter, the State denies any legal inconsistency in the verdicts. It asserts that "at worst," acquitting Sassman of animal abuse was factually inconsistent with holding him responsible for killing Rice. The State compares the situation to the disparate treatment of the two passengers in the vehicular homicide hypothetical cited in *Halstead*.

After considering both sides, we conclude the district court properly denied Sassman's motion for a new trial on this ground. In denying Sassman's motion, the district court offered this insightful take on the jury's verdicts: "at first blush, from a factual standpoint, it may seem that it doesn't make a lot of sense because ultimately the jury convicted the defendant of killing the human victim, but not killing the animal in this case." But, the court continued, "when one looks closer at the elements of the crime and the jury instructions that were given . . . it's clear what the jury in fact concluded. Specifically, the jury concluded that the defendant did

not have specific intent."[1]  Both animal abuse and first-degree murder required proof of specific intent; second-degree murder did not.

Beyond that take, the State contends that Sassman's challenge also fails because of a "factual wrinkle."  In the State's view:

> [J]urors could have inferred that Sassman may not have seen the dog before striking it—but that he would have seen Rice.  So his decision to swerve to the left to strike Rice with his truck might have established an intent to strike and harm Rice, *without* proving any similar intent to strike or injure the dog.

Whether the jury focused on the element of specific intent or a factual distinction, we do not find that its verdicts were "so logically and legally inconsistent as to be irreconcilable within the context of the case."  *See State v. Fintel*, 689 N.W.2d 95, 101 (Iowa 2004).   So we affirm the district court on this issue.

### B. Did unfair prejudice from viewing gruesome autopsy photographs substantially outweigh their probative value?

Sassman contends that, applying Iowa Rule of Evidence 5.403, the district court should have excluded twenty photographs taken during Rice's autopsy.  We review the court's admission of those photographs for an abuse of discretion. *State v. Slayton*, 417 N.W.2d 432, 436 (Iowa 1987).

We start with the language of the rule: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Iowa R. Evid. 5.403.   To apply this rule, courts ask two questions: (1) what is the

---

[1] The court rightly assumed that the jury decided that Sassman did not act with specific intent because of his diminished-capacity and intoxication defenses.

probative value of the evidence? And (2) does the danger of its wrongful effect on the jury weigh heavily against that probative value? *See State v. Buelow*, 951 N.W.2d 879, 889 (Iowa 2020).

On the first question, the district court decided that the photographs were probative of the victim's devastating injuries. And the extent of those injuries spoke to Sassman's intent and malice aforethought when barreling into the victim, never braking, and dragging her body under his truck. Also to that end, Dr. Joshua Akers, the Polk County medical examiner, conducted the autopsy and testified extensively to the nature, extent, and severity of Rice's wounds. The photographs were relevant to explain his testimony. *See State v. Brown*, 397 N.W.2d 689, 700 (Iowa 1986). The photographs were also relevant to the State's assertion that the killing was done with malice aforethought. *See State v. Metz*, 636 N.W.2d 94, 99 (Iowa 2001). Sassman does not contest the probative value of the photographs.

Rather, he concentrates on the second inquiry, claiming the photographs were unduly prejudicial. He argues the graphic images appealed to the jurors' sympathies and their instinct to punish. He also points out that he stipulated to the admission of photographs of the victim's body at the scene, showing the "horrific injuries" she suffered. He argues the district court should have excluded the autopsy photographs as cumulative to each other, showing similar injuries from different angles, and cumulative to the crime scene images.

We do not find the autopsy photographs to be cumulative or unfairly prejudicial. Each illustrated a particular stage of the medical examiner's findings. And the many fatal injuries rebutted Sassman's argument that the killing was accidental. The prosecutor made this point in closing argument:

Why are these pictures important? Because this is brutal. This is with an evil purpose. Hitting somebody might be an accident. Running them over, dragging them underneath your vehicle, moving them the distance of a yard trapped underneath your vehicle, that is malice.

As then Chief Justice Reynoldson wrote: "Murder is often a gruesome affair giving rise to equally gruesome evidence." *Brown*, 397 N.W.2d at 700. The district court did not abuse its discretion in admitting the photographs.

### C. Did the State offer substantial evidence that Sassman acted with malice aforethought? Did the greater weight of the evidence favor acquittal on the second-degree murder charge?

Sassman challenges both the sufficiency and the weight of the evidence supporting his conviction for second-degree murder. *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003) (reiterating difference between those standards). We review the sufficiency issue for correction of legal error. *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018). We consider the entire record, not just proof supporting the conviction, and view the evidence in the light most favorable to the State. *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). By contrast, we review for an abuse of discretion the district court's denial of Sassman's claim that he was entitled to a new trial because the verdict was against the weight of the evidence. *State v. Ernst*, 954 N.W.2d 50, 60 (Iowa 2021)). A new trial is appropriate under a weight-of-the-evidence challenge "only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.* (citation omitted).

Second-degree murder requires proof beyond a reasonable doubt of these elements:

1. On or about April 5, 2020, the defendant used his motor vehicle to strike Lauren Rice.
2. Lauren Rice died as a result of being struck.
3. The defendant acted with malice aforethought.

Sassman contests only the third element—that he acted with malice aforethought. The jury instructions defined malice aforethought as "a fixed purpose or design to do some physical harm to another which exists before that act is committed." *Accord Reeves*, 670 N.W.2d at 207. The definition explained that malice aforethought "need not exist for any particular length of time."

As he did at trial, Sassman insists on appeal that he had no "fixed purpose or design" to harm Rice. In his view, he acted "at most recklessly when he unintentionally caused [her] death." Sassman details the State's evidence at length, including observations of his impaired condition and "rambling" statements. Sassman also highlights Dr. John Fell's opinion that he was intoxicated and suffering from a mental disorder at the time of the killing.

To rebut, the State points to Sassman's statements to police that while driving his truck he decided "I'm gonna run the bitch over by example" and "I'm gonna speed bump that bitch." The State also relies on circumstantial evidence that Sassman acted with a "fixed design" to strike Rice with his truck, including tire tracks veering off Beaver Avenue and onto the sidewalk.

At bottom, the State's evidence created a jury question on malice aforethought. True, Sassman exhibited clear signs of impairment. But his defenses of intoxication and diminished capacity did not apply to the second-degree murder charge. *See State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). That is because those defenses did not "bear[] on the issue of malice

aforethought." *See State v. Gregory*, 327 N.W.2d 218, 220 (Iowa 1982). When viewing the evidence in the light most favorable to the State, we find Sassman's aggressive manner of driving the truck and subsequent statements to police were substantial evidence of his malice aforethought. *See State v. Kinsel*, 545 N.W.2d 885, 888 (Iowa Ct. App. 1996) (finding defendant acted with malice aforethought when he drove his truck down the sidewalk in upholding second-degree murder conviction).

As for the second standard, Sassman claims that the guilty verdict was contrary to the greater weight of the evidence. *See* Iowa R. Crim. P. 2.24(2)(6); *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). Without identifying any precise testimony, Sassman claims that after considering witness credibility, we should vacate his convictions and remand for a new trial. Sassman has "merely repackaged his sufficiency-of-the-evidence challenge into a weight-of-the-evidence challenge." *Ernst*, 954 N.W.2d at 60. Because Sassman identifies no "specific evidence that preponderates so heavily in favor of acquittal" we cannot find that the district court abused its discretion in denying his motion for a new trial. *Id.*

**AFFIRMED.**