MECHANICSVILLE TRUST & SAVINGS BANK, Mechanicsville, Iowa, Appellee,

v.

HAWKEYE–SECURITY INSURANCE COMPANY, Appellant.

No. 52877.

Supreme Court of Iowa.

April 9, 1968.

Rehearing Denied May 7, 1968.

Cartwright, Druker, Ryden & Fagg, Mar-shalltown, for appellant.

Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellee.

MOORE, Justice.

Plaintiff's action to recover under defendant's loss-discovery bond due to embezzlement by an officer of plaintiff bank was submitted to the trial court on plaintiff's application for adjudication of law points, the pleadings, a stipulation of facts and answers to interrogatories. The parties also stipulated the court could enter a final judgment if it adjudicated defendant's pleaded affirmative defenses were untenable. They of course reserved the right to appeal to this court. The parties may stipulate to such results. Burnett v. Poage, 239 Iowa 31, 39, 29 N.W.2d 431, 435, and citations; 83 C.J.S. Stipulations § 2. We commend counsel for thereby simplifying and shortening submission of the real issues to the trial court.

The trial court held defendant's pleaded affirmative defenses were insufficient as a matter of law and entered judgment against defendant for $115,451.24 plus interest thereon from September 10, 1965. From this judgment defendant has appealed. Plaintiff has cross-appealed, claiming interest should have been allowed from the date of each embezzlement by plaintiff's employee.

The following facts are derived from the pleadings, the written stipulation and admissions by each party in answers to interrogatories. Under date of July 25, 1962 defendant Hawkeye-Security Insurance Company issued to plaintiff Mechanicsville Trust and Savings Bank its "Bankers Blanket Bond, Standard Form No. 24", by the terms of which defendant bound itself to hold plaintiff harmless and to indemnify it to an amount not exceeding $90,000 (raised by rider on October 4, 1963, to $120,000) from and against any losses sustained by plaintiff through the dishonest, fraudulent or criminal act of any of its employees committed at any time but discovered after noon of July 23, 1962, in respect to the bond as originally issued, or discovered after noon of September 25, 1963, in respect to the bond as amended by the rider.

When defendant issued its bond, which the parties refer to as a "discovery bond," Laverne J. Paulson was plaintiff's executive vice president, cashier and managing agent. He had been an employee of the bank since August 5, 1957. Paulson was also actively

in charge of an insurance agency operating on bank premises under the title of Mechanicsville Insurance Service. Such agency had been operative for many years prior to Paulson's connection with the bank. The profits of the insurance agency were divided, 20% to Paulson, 30% to plaintiff bank and 50% to other bank employees. Defendant company was represented by said agency. It had designated Paulson, doing business as Mechanicsville Insurance Service, as its agent under a contract dated September 3, 1957.

Negotiations for the discovery bond herein involved were initiated by another agent of defendant with Paulson. That agent apprised Paulson of the desirability of switching plaintiff's then existing bond coverage to defendant company. Correspondence regarding the bond was directed to Paulson as "Vice President, Mechanicsville Trust and Savings Bank." The bond was forwarded to "L. J. Paulson, Mechanicsville Insurance Service" with letter stating "Enclosed is your above bond."

The resident agent, Doris B. Reid, representing defendant in this issuance of the bond was required by Code section 515.52 to sign it and under sections 515.52 and 515.53 she could be compensated only on a commission basis. Mechanicsville Insurance Service, however, was paid a commission.

Commencing in 1958 and continuing to May, 1965, Paulson, through a series of separate embezzlements, appropriated funds of plaintiff aggregating $141,909.40, which he successfully concealed from plaintiff until May, 1965. He accomplished this by forging names of bank customers to notes and placing the fictitious notes in the note file. Over the period Paulson paid back to plaintiff bank $26,458.16, leaving a net of $115,451.24 misappropriated by him.

During the period from May 15, 1965 to June 29, 1965 plaintiff discovered the misappropriations at which time the discovery bond was in full force and effect. Plaintiff furnished defendant with proof of its losses on July 11, 1965 and following defendant's denial of liability this action was started.

Defendant's pleaded defense is predicated upon two separate but closely related legal principles allegedly applicable to the factual circumstances which were pleaded in the alternative. (1) Unknown to defendant, plaintiff was the real owner of Mechanicsville Insurance Service through which the bond was issued and as such was chargeable with Paulson's fraud in concealing his previous embezzlements. (2) Unknown to defendant, plaintiff and Paulson were co-owners of the insurance agency and as such Paulson's fraud must be imputed to plaintiff, thereby barring recovery on the bond.

Plaintiff's primary contention, with which the trial court agreed, is that under the facts and the very nature of the bond defendant is precluded from attributing Paulson's fraud to plaintiff. We agree.

I. The rule is well settled that a principal is responsible for the fraud of his agent if he has entrusted to the agent a matter which puts him in a position to perpetrate the fraud complained of while the agent is executing the transaction within the scope of his employment. International Milling Co. v. Gisch, 258 Iowa 63, 74, 137 N.W.2d 625, 632; Turner v. Zip Motors, 245 Iowa 1091, 1096, 1097, 65 N.W.2d 427, 430, 45 A.L.R.2d 1174, and citations; 3 C.J. S. Agency § 257. The basis of the rule is that ordinarily knowledge of an agent is imputed to the principal.

II. An exception to imputation of notice from the agent to the principal is well recognized where the conduct and dealings of the agent clearly raise a presumption that he would not communicate the fact in controversy, as where such communication would necessarily prevent the consummation of a fraudulent scheme the agent was engaged in perpetrating. Sherman v. Harbin, 125 Iowa 174, 187, 100 N.W. 629, 633; Clapp v. Wallace, 221 Iowa 672, 677, 266 N. W. 493, 495; Wooddale, Inc. v. Fidelity and Deposit Co. of Maryland, Cir. 8, 378 F.2d

627, 634; Hall v. Aetna Casualty & Surety Co., Cir. 2, 89 F.2d 885, 887; Maryland Casualty Co. v. Tulsa Industrial L. & Inv. Co., Cir. 10, 83 F.2d 14, 16, 105 A.L.R. 529; Mutual L. Ins. Co. of New York v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202; Reardon v. Mutual Life Ins. Co., 138 Conn. 510, 86 A.2d 570, 30 A.L.R.2d 828. See also annotation 105 A.L.R. 535 entitled: "Agent's knowledge of his own embezzlement or other misconduct as imputable to principal in latter's suit on fidelity bond or insurance."

3 Am.Jur.2d, Agency, section 282, page 644, states: "There is a well established exception to the general rule that the knowledge of an agent is to be imputed to the principal, in situations where the conduct and dealings of the agent are such as to raise a clear presumption that he will not communicate to the principal the facts in controversy * * *."

Defendant-appellant acknowledges the exception to the rule and concedes it applies to the relationship of Paulson as agent of the bank but argues it should not be extended to the situation here because the bank owned, or was a partner in, the Mechanicsville Insurance Service agency. In other words, defendant asserts Paulson's knowledge as an employee or co-owner with the bank in the insurance agency is imputable to plaintiff bank. We are unable to ascertain, and the record fails to demonstrate how an ownership interest in the insurance agency has any substantial and material adverse effect on the risk assumed by defendant. Its loss-discovery bond was written by defendant and accepted by plaintiff bank on the mutual assumption Paulson may have been dishonest. Its purpose was to cover losses subsequently to be discovered.

III. Paulson procured the discovery bond as required by Code section 528.3 which provides:

"The officers and employees of any state bank, savings bank, or trust company having the care, custody, or control of any funds or securities for any such bank or trust company, shall give a good and sufficient bond in a company authorized to do business in this state indemnifying the said bank or trust company against all losses, which may be incurred by reason of any act or acts of fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful abstraction, misapplication, misappropriation, or other criminal act committed by such officer or employee directly or through connivance with others, until all of his accounts with the said bank or trust company shall have been fully settled and satisfied. The amounts and sureties shall be subject to the approval of the board of directors of any such bank or trust company. The premium on said bonds shall be paid by the said bank or trust company."

■ This bond was approved by the bank's board of directors, of which Paulson was a member, and the premium paid by the bank. Defendant was aware of the nature, purpose and coverage of the bond, including the fact Paulson was one of the bank employees covered thereunder. We do not understand how the bank's undisclosed interest in the insurance agency would affect the clear presumption Paulson would not reveal to the bank his fraudulent conduct. To agree with defendant's contention would render the terms of the bond meaningless and impossible of performance. Under the facts and the very nature of the bond defendant is precluded from attributing Paulson's fraud to plaintiff.

IV. Plaintiff alleged in its petition it had suffered losses as a result of Paulson's dishonest acts in a sum in excess of $120,-000. It did not specify and was not required to particularize as to the elements of its loss. The prayer of the petition demanded judgment for $120,000 with interest and costs. The stipulation included an itemized statement of Paulson's embezzlements beginning March 24, 1958 and continuing through April 10, 1965. It further provided that if the trial court found against defendant the judgment should be for $115,451.24 "plus interest to the extent the court shall

find the plaintiff entitled thereto under the pleadings and admitted facts."

The trial court entered judgment for $115,451.24 together with interest at 5% per annum from and after September 10, 1965 and for costs. September 10, 1965 is the date the 60 day period allowed for payment by defendant expired after plaintiff's filing of proof of loss. Code section 535.3 provides 5% interest per annum is allowed on judgments.

Plaintiff on cross-appeal asserts the judgment should be for $120,000, the face amount of the loss discovery bond. It argues defendant's liability is for the same amount as that of Paulson. In other words, Paulson used the bank's money and deprived it of the use thereof and therefore owed interest from the date of each embezzlement. Defendant does not challenge the proposition Paulson owed such interest but takes the position it would owe interest only after the 60 day period following filing of proof of loss expired. Interest owing on embezzled funds is set at 5% by Code section 535.2.

A quick interest computation on the amount of each unpaid misappropriation from the date thereof results in a sum greatly in excess of $4,548.76, which would increase the trial court's judgment to $120,000. We hold plaintiff is entitled to judgment against defendant for $120,000 plus interest at 5% from September 10, 1965 and for costs.

Up to the face of a private bond the surety is liable for interest the same as the principal. For any other interest in excess of the face of the bond the surety can be held liable only for its own default. Burns v. Massachusetts Bonding & Ins. Co., 62 Cal.App.2d 972, 146 P.2d 29; Hack v. American Surety Co. of New York, Cir. 7, 96 F.2d 939; Edmunds-Bouvier S. & L. Ass'n v. New Amsterdam Cas. Co., 389 Pa. 79, 132 A.2d 181; Borough of Totowa v. American Surety Co. of N. Y., 39 N.J. 332, 188 A.2d 586; McShane v. Howard Bank,

73 Md. 135, 20 A. 776, 10 L.R.A. 552; Bank of Erie Trust Co. v. Employers' L. Assur. Corp., 322 Pa. 132, 185 A. 224, 104 A.L.R. 1170.

10 Am.Jur.2d, Banks, section 97, page 102, states: "Generally speaking, the measure of damages in an action to recover from the sureties on the official bond of a bank cashier the amount which he has embezzled from the bank from time to time, is the sum of such embezzlements and the interest on each sum embezzled from the time it was taken."

Affirmed on defendant's appeal, modified and affirmed on plaintiff's cross-appeal, and remanded for judgment in accord with this opinion.

All Justices concur.