IOWA STATE COMMERCE
COMMISSION, Appellee,

v.

MANILLA GRAIN TERMINAL,
INC., Respondent,

and

IGF Insurance Company, Appellant.

No. 84–771.

Supreme Court of Iowa.

Feb. 13, 1985.

Larry L. Seckington and Michael J. Schroeder of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for appellant.

Philip E. Stoffregen, General Counsel, Patrick J. Nugent, Deputy Counsel, and Joan Susan Allender, Asst. General Counsel, Iowa State Commerce Commission, for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, SCHULTZ, and WOLLE, JJ.

LARSON, Justice.

This is an appeal in an action brought by the Iowa State Commerce Commission seeking appointment as receiver of the Manilla Grain Terminal pursuant to Iowa Code section 543.3 (1983). The receivership action resulted from alleged shortages in the quantity and quality of grain stored in the facility. The commission was appointed as receiver and disposed of the stored grain. Net proceeds from the sale were invested through the state treasurer pending distribution to grain depositors.

The issues raised in this appeal arise from the district court's approval of the commission's proposed "plan of distribution," Iowa Code section 543.3(3). Specifically, the plan proposed: (1) that the commission be reimbursed pursuant to Iowa Code section 543.4(6) for the salary of its staff attorney in connection with the receivership; (2) that the liability of IGF Insurance Company, as surety on the warehouse bond, be determined without consideration of interest earned on the grain sale proceeds; and (3) that the surety company be required to pay interest on its liability from the date of the commission's appointment as receiver.

IGF filed objections to the plan, arguing: (1) that the fees of the commerce commission's staff attorney were not reimbursable as a receivership expense; (2) that the surety's liability should be reduced by the amount of interest earned on the receiver's sale of the grain; and (3) that no interest was due on its liability since it was, as yet, undetermined and because there was no statutory authority for such.

The trial court essentially adopted the commission's recommendations, and this appeal followed. We affirm.

I. *The Attorneys Fees.*

The commission asserted in its interim report that it had "incurred costs of $5198.97 which are directly attributable to the receivership." Included as a portion of these costs was the salary of its staff attorney, Ron Polle. IGF maintains that this was an improper receivership expense and could not be deducted from the receivership assets.

Iowa Code section 543.4(6), upon which the commission relied, provides:

The commission shall be entitled to reimbursement out of commodities or proceeds held in receivership for all expenses incurred as court costs or in handling and disposing of stored commodities, and for all other costs directly attributable to the receivership. The right of reimbursement of the commission shall be prior to any claims against the

commodities or proceeds of sales thereof, and shall constitute a claim against the surety bond of the licensee.

The trial court found the attorney's salary to be reimbursable. In a motion for enlargement or amendment of the findings and conclusions filed under rule 179(b), the surety company requested the trial court cite the authority "upon which it relied in concluding that the time spent by Ron Polle [the staff attorney] was reasonable and reimbursable as a receivership expense." The court responded by merely citing a stipulation made by the parties to the effect that the staff attorney did in fact spend 45.5 hours on the receivership. The court did not cite any authority for the reimbursement of staff attorney expense.

The issue which confronts us at the outset is whether the issue was properly raised in the district court. In its response to the proposed report filed by the commission, the surety company merely objected to the number of hours involved in the attorneys fee claim; it did not challenge the authority of the court to provide for reimbursement.

 Under these circumstances, we will not consider the matter on appeal. While under a broad reading of the rule 179(b) motion, the issue might be considered to have been raised, it was too late. As rule 179(b) clearly indicates, it is one for the enlargement or amendment of existing conclusions and findings; it does not provide a vehicle through which to raise additional issues. *See Osborne v. Iowa Natural Resources Council*, 336 N.W.2d 745, 747–48 (Iowa 1983).

## II. *The Accrued Interest Issues.*

Shortly after its appointment as receiver, the commission sold the grain and invested the proceeds. The trial court ruled this interest should be distributed on a pro rata basis to depositors holding valid claims before the extent of the surety's liability was determined.

The surety contends that it was error to return the accrued interest on the grain

sale proceeds to depositors. According to its theory, the interest should be credited to its obligation as surety on the warehouse bond. It bases its argument on section 543.4(4), which provides:

The plan of disposition, as approved by the court, shall provide for the distribution of the stored commodities, or the proceeds from the sale of commodities, or the proceeds from any insurance policy or surety bond, or any combination thereof, less expenses incurred by the commission in connection with the receivership, to depositors on a pro rata basis as their interests are determined. Distribution shall be without regard to any setoff, counterclaim, or storage lien or charge.

Under the surety's theory, interest earned on the grain sale receipts became part of the "proceeds" under section 543.4 and therefore must be used to satisfy receivership expenses and claims before there is a determination of the surety's liability. In other words, the accrued interest would be applied to the benefit of the surety. We do not agree.

 A receiver is an officer appointed by the court to take into its custody the control and management of property or funds of another, pending judicial determination of its proper distribution. *Dobler v. Bawden*, 238 Iowa 76, 81–82, 25 N.W.2d 866, 869 (1947). Title to the property does not pass to the receiver; it remains in the original owner. 75 C.J.S. *Receivers* § 103, at 745–46 (1952).

 Despite the fact section 543.4(4) makes no distinction between the proceeds of the sale of the grain and proceeds gained by the investment of the sale proceeds, we agree with the district court that the interest should be treated separately. It should be paid to the depositors on a pro rata basis and should not be used to reduce the surety's obligation. This, it seems to us, more logically effects the purpose of the receivership legislation which is, in part, to protect the depositors. *See* Iowa Code § 543.3(1).

The depositors, who have been deprived of the grain and the proceeds of this sale during the pendency of the receivership, should be compensated by receiving the interest on the proceeds. If there had been no receivership, and the depositors of the grain, rather than the receiver, had sold the grain, they would, of course, be entitled to any interest on the proceeds. The intervention of a receiver should, as nearly as possible, preserve the rights of those depositors. If there is a shortfall, the surety, not the claimants, must bear the loss. That is the purpose of requiring a bond. *See* Iowa Code § 543.12.

This disposition also resolves another of IGF's arguments, that the distribution of accumulated interest to the depositors results in their unjust enrichment. For the reasons discussed above, the interest belonged to the depositors; it cannot be considered unjust enrichment.

III. *Interest Accrual Under Section 535.3.*

Finally, IGF argues that the trial court erred in requiring it to pay interest on its bond liability at the rate of ten percent per year from the commencement of the action. It maintains that interest on unliquidated damages runs from the date of judgment. *See Vorthman v. Keith E. Myers Enterprises*, 296 N.W.2d 772, 778 (Iowa 1980); *Mrowka v. Crouse Cartage Co.*, 296 N.W.2d 782, 783–84 (Iowa 1980).

The statutory amendment of section 535.3 (1979), however, increased the interest rate on judgments to ten percent and provided for the accrual of interest from the date of the commencement of the action. 2 Iowa Legis.Serv. 146 (West 1980). We have held the award of this interest obligatory on the trial court. *Rowen v. LeMars Mutual Insurance Co of Iowa*, 347 N.W.2d 630, 641 (Iowa 1984); *Sheer Construction, Inc. v. W. Hodgman and Sons, Inc.*, 326 N.W.2d 328, 334 (Iowa 1982). This statute applies to all judgments entered after January 1, 1982, *Janda v. Iowa Industrial Hydraulics, Inc.*, 326 N.W.2d 339, 344 (Iowa 1982),

even where interest is not requested. *Oskaloosa Food Products Corp. v. Aetna Casualty and Surety Co.*, 337 N.W.2d 521, 523 (Iowa 1983). The district court properly allowed interest from the date of the commencement of the action. Section 535.3 applies to the surety as well as to the principal. *Mechanicsville Trust & Savings Bank v. Hawkeye-Security Insurance Co.*, 158 N.W.2d 89, 93 (Iowa 1968). We find no basis for reversal.

AFFIRMED.