# IN THE COURT OF APPEALS OF IOWA

No. 15-0471
Filed December 21, 2016

**WESTCO AGRONOMY COMPANY, LLC.,**
        Plaintiff-Counterclaim Defendant-Appellant/Cross-Appellee,

**vs.**

**WILLIAM S. WOLLESEN a/k/a BILL WOLLESEN; KRISTI J. WOLLESEN; WILLIAM S. AND KRISTI J. WOLLESEN REVOCABLE TRUST; JOHN W. WOLLESEN; IOWA PLAINS FARMS; and CHAD A. HARTZLER,**
        Defendants-Appellees,

—————————————————————————

**IOWA PLAINS FARMS,**
        Counterclaim Plaintiff-Third-Party Plaintiff/Cross-Appellant,

**vs.**

**WEST CENTRAL COOPERATIVE,**
        Third-Party Defendant-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Story County, Michael J. Moon, Judge.


        In this appeal and cross-appeal, both sides raise a number of challenges to the jury verdict and the court's rulings denying a new trial and granting summary judgment. **AFFIRMED ON APPEAL; AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON CROSS-APPEAL.**


        John F. Lorentzen, Thomas H. Walton, and Ryan W. Leemkuil of Nyemaster Goode, P.C., Des Moines, and John A. Gerken of Wilcox, Gerken, Schwarzkopf, Copeland & Williams, P.C., Jefferson, for appellants.
        Joel D. Vos and John C. Gray of Heidman Law Firm, L.L.P., Sioux City, and Samuel L. Blatnick of Kutak Rock, LLP, Kansas City, Missouri, for appellees.

John P. Passarelli and Meredith A. Webster of Kutak Rock, LLP, Kansas City, Missouri, pro hac vice.

Heard by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

A supplier of agricultural products sued a customer for damages after finding the customer's account contained insufficient funds to pay for a delivery. The customer filed counterclaims against the supplier's parent company. A jury awarded damages on the claims and counterclaims. Both sides raise a number of challenges to the jury verdict and the court's rulings denying a new trial and granting partial summary judgment.

## I.    *Background Facts and Proceedings*

West Central Cooperative is an Iowa agricultural cooperative. Westco Agronomy Company, L.L.C. is a wholly-owned subsidiary of West Central formed to "streamline the delivery of agronomy products—fertilizer, seed, chemicals—to the farmers." We will refer to both as "Westco" unless otherwise indicated.

Chad Hartzler was hired by Westco as the seed department manager. Part of his job was to increase seed sales. One of Westco's customers was Iowa Plains Farms, owned by William, Kristi, and John Wollesen. We will refer to the company and its owners as IPF unless otherwise indicated.

IPF purchased seed and fertilizer from Westco and paid Hartzler directly, purportedly to receive better pricing. Between 2005 and 2010, Hartzler charged IPF more than $6 million. He retained $487,315 in "commission."

IPF believed its payments to Hartzler were prepayments for future products and Westco's documentation confirmed its belief. In actuality, Hartzler booked the prepayments as payments for currently purchased products. He charged IPF prices that were below Westco's cost but recorded higher prices in Westco's accounting system. The result was a gradually-accruing deficit which,

by 2010, had reached $2.1 million. Hartzler convinced IPF to write three checks totaling approximately that amount. IPF believed the checks represented prepayments for the 2011 crop year. Hartzler applied the payments to the deficit.

The following spring, matters came to a head. By this time, Hartzler had resigned, and Westco told IPF it would not release any more products due to "internal issues."

Westco sued the Wollesens, IPF, and Hartzler, raising claims of commercial bribery, theft, conversion, breach of fiduciary duty, breach of duty of loyalty, ongoing unlawful conduct under Iowa Code chapter 706A (2011), unjust enrichment, foreclosure of an agricultural lien, and breach of contract. Westco sought compensatory and punitive damages and requested a jury trial. IPF asserted counterclaims and filed a third-party petition against Westco's parent company, West Central, raising claims of breach of contract, fraud, negligent retention, breach of fiduciary duty, conversion, ongoing unlawful conduct (knowing receipt of proceeds) under section 706A.2(1)(a), ongoing unlawful conduct (negligent empowerment) under section 706A.2(5)(b)(4), wrongful attachment, and lost agricultural profits. Hartzler pled guilty to federal wire fraud and did not mount a defense in this litigation.

The district court granted IPF's motion for summary judgment on all but three of Westco's claims. Westco voluntarily dismissed its breach-of-contract claim, leaving only its claims for breach of fiduciary duty and ongoing unlawful conduct for trial.

The district court also granted Westco's motion for summary judgment on IPF's claims for negligent retention, conversion, ongoing unlawful conduct (negligent empowerment) under section 706A.2(5)(b)(4), wrongful attachment, and lost agricultural profits. With regard to the negligent empowerment claim, the district court found the burden of proof language in section 706A.2(5)(b)(4) unconstitutional. The following counterclaims remained for trial: (1) breach of contract, (2) fraudulent misrepresentation, and (3) ongoing unlawful conduct (knowing receipt of proceeds) under section 706A.2(1)(a).

Westco moved for equitable issues to be tried in equity. Westco also filed a motion for leave to file a third amended petition. The district court denied the motions. Before jury selection and again at the close of evidence, Westco renewed its motion to try equitable issues by equitable proceedings. The district court again denied the motion.

The matter proceeded to trial on Westco's two claims and IPF's three counterclaims. The jury awarded Westco $485,315 in damages from Hartzler— an amount equal to the "commission" Hartzler received from IPF. The jury awarded IPF $576,189 in damages from West Central—an amount equal to the cost of replacement product after Westco failed to deliver product in 2011.

Westco renewed its motion for directed verdict and moved for judgment notwithstanding the verdict and for new trial. IPF filed a motion for additur and for new trial. The district court denied the motions.

On appeal, Westco contends (A) its equitable claims should have been tried by equitable proceedings, (B) the jury rendered inconsistent verdicts, and

(C) the district court erred in denying its motion for judgment notwithstanding the verdict. On cross-appeal, IPF contends (A) it is entitled to a new trial on its ongoing criminal conduct (knowing receipt of proceeds) claim, (B) the district court erred in granting summary judgment in favor of West Central on its ongoing criminal conduct (negligent empowerment) claim, and (C) the district court erred in denying IPF's motion for additur.

## II.    Westco's Appeal

### A.    New Trial by Equitable Proceedings

"[T]here is no right to a jury trial generally in cases brought in equity." *Weltzin v. Nail*, 618 N.W.2d 293, 296 (Iowa 2000). Westco characterizes its claims that survived summary judgment as equitable and argues they should have been tried to the district court rather than the jury. Error was preserved on this issue and we proceed to the merits of the court's ruling, reviewing it for an abuse of discretion. *See Morningstar v. Myers*, 255 N.W.2d 159, 161 (Iowa 1977) (stating, when both legal and equitable issues are presented, the order of which is tried first "is a matter which lies within the trial court's discretion and ordinarily is to be decided on considerations of efficiency, conservation of judicial time and avoidance of multiple trials").

The district court concluded Westco pled its breach-of-fiduciary-duty and ongoing-unlawful-conduct claims as legal claims:

> The ongoing criminal conduct count has been pled in tort and likewise seeks the legal remedies of damages, both compensatory and [treble] damages under the provisions of Iowa Code section 706A.3(12)(b)(3). The breach of fiduciary duty claim has been pled as a legal action. As noted by the Iowa Supreme Court in *Weltzin v. Nail*, 618 N.W. 293, 299 (Iowa 2000):

> A breach of fiduciary duty claim is not an individual tort in its own right at common law . . . it is usually brought at law, bootstrapped by a tort like negligence or fraudulent misrepresentation (citations omitted).

(Footnote omitted.) The district court also indicated the motion to try the claims by equitable proceedings was an untimely effort "to resurrect" equitable claims that were previously dismissed. We discern no abuse of discretion in the court's ruling.

First, Westco made an unconditional jury demand. *See* Iowa Ct. R. 1.902(3) ("Unless limited to a specific issue, every demand shall be deemed to include all issues triable to a jury. If a limited demand is filed, any other party may, within ten days thereafter or such shorter time as the court may order, file a demand for a jury trial of some or all other issues."). The unrestricted nature of the demand suggests the surviving claims were triable at law to a jury.

Second, Westco's primary request for relief in conjunction with its breach-of-fiduciary-duty claim was damages based on Hartzler's claimed acceptance of bribes from the Wollesens. A request for damages is a hallmark of a law claim triable to a jury. *See Weltzin,* 618 N.W.2d at 300 ("[A]n action seeking recovery of monetary damages will generally give rise to a right to trial by jury . . . ." (alteration in original)). Although Westco also sought "such other relief as may be just and equitable," we are persuaded "the mere prayer for [equitable relief] is not enough to justify the trial of the issues on the equity side." *Lynch v. Schemmel*, 155 N.W. 1019, 1023 (Iowa 1916); *see also In re McIntosh's Estate*, 159 N.W. 223, 226 (Iowa 1916) ("The proceeding always was and has remained a proceeding at law . . . .").

Westco asks us to look beyond its primary request for relief.  *See Weltzin*, 618 N.W.2d at 297 (citing precedent focusing on "the *nature* of the case itself rather than solely the remedy").  It characterizes its breach-of-fiduciary-duty claim as one premised on the breach of a duty of loyalty rather than the breach of the standard of care.  This characterization does not assist Westco because a breach of the duty of loyalty has been viewed as one sounding in tort or contract—both law actions.  *See Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 600 (Iowa 1999) (finding it unnecessary to determine "whether a separate cause of action exists for breach of loyalty, *either in tort or contract*" (emphasis added)).

We turn to Westco's ongoing unlawful conduct claim.  Again, Westco alleged it "suffered damages."  While Westco also sought the equitable remedies of a constructive trust, temporary restraining order, or preliminary injunction, these remedies were requested as a means of collecting on a judgment for money damages.[1]

Finally, Westco argues its "conspiracy claims are equitable."  However, it did not plead independent claims of conspiracy and, in any event, the rationale articulated above applies equally to these claims.

We conclude the district court did not abuse its discretion in denying Westco's motion to have its "equitable" claims tried to the court.

---

[1] In connection with its prayer for injunctive relief, Westco pled, "[T]here is a possibility that a judgment for money damages might be difficult to execute."

### B. *Inconsistent Verdicts*

Westco filed a motion for new trial, claiming, in part, that the jury verdict was inconsistent. The district court summarily denied the motion. On appeal, Westco reprises this argument. Its contention is premised on the jury's answers to the following questions:

> Question No. 3  Did Westco prove that Chad Hartzler engaged in ongoing unlawful conduct?
>           Yes __X__ No _____
> . . . .
> Question No. 12, [21, 30]  Did Westco prove that Bill Wollesen [Kristi Wollesen, or John Wollesen] engaged in ongoing unlawful conduct?
>           Yes _____ No __X__

These answers, Westco argues, did not comport with the jury instructions on ongoing unlawful conduct. The primary instruction based ongoing unlawful conduct on commercial bribery. The instruction stated:

> Westco claims Chad Hartzler engaged in ongoing unlawful conduct. To prove Chad Hartzler committed ongoing unlawful conduct, Westco must prove that Chad Hartzler
>           1. Committed *commercial bribery* for financial gain as defined in Instruction No. 23, on a continuing basis, as defined in Instruction No. 25, or
>           2. Knowingly received any proceeds, as defined in Instruction No. 27, of *commercial bribery* being committed for financial gain on a continuing basis.

(Emphasis added.)  Commercial bribery was defined in pertinent part as follows:

> 4. The payments of money were offered and delivered by Bill Wollesen, Kristi Wollesen, or John Wollesen in exchange for Chad Hartzler engaging in a series of business transactions *which Bill Wollesen*, *Kristi Wollesen*, *or John Wollesen had reason to know*, *as defined in Instruction No. 28*, *were in conflict with Chad Hartzler's employment relation with and duties owed to Westco.*

(Emphasis added.)

According to Westco, "In answering question No. 3 affirmatively, the jury necessarily found that Hartzler engaged in commercial bribery . . . in a series of business transactions occurring over a period of years, and that one or more of the Wollesens also engaged in those transactions." At the same time, the jury found the Wollesens did not engage in commercial bribery, even though the definition of commercial bribery required involvement by the Wollesens. Westco asserts "[t]hese answers are inconsistent and irreconcilable."

The Iowa Supreme Court discussed "inconsistent verdicts" in *State v. Halstead*, 791 N.W.2d 805, 807 (Iowa 2010). The court noted "the term 'inconsistent verdicts' is often used in an imprecise manner and may include a wide variety of related, but nonetheless distinct, problems." *Halstead*, 791 N.W.2d at 807. The court referred to a scenario involving a defendant convicted of conspiracy where the remaining confederates are acquitted. *Id.* at 808. This scenario, the court stated, would produce "an inconsistent verdict because it takes more than one person to conspire." *Id.* (citing Michelle Migdal Gee, Annotation, *Prosecution or Conviction of One Conspirator as Affected by Disposition of Case Against Coconspirators*, 19 A.L.R.4th 192, 198-204 (1983); C.T. Drechsler, Annotation, *Inconsistency of Criminal Verdicts as Between Two or More Defendants Tried Together*, 22 A.L.R.3d 717, 720-21 (1968)).[2]

---

[2] The general rule is that the conviction of only one defendant in a conspiracy prosecution cannot stand where the disposition of the charges against all other alleged conspirators is by acquittal. *See* Gee, 19 A.L.R.4th 192, § 3[a]. Iowa adheres to this general rule. *Id.* (citing *State v. Davis*, 297 N.W. 274 (Iowa 1941), *State v. Keul*, 5 N.W.2d 849 (Iowa 1942); *State v. Lockhart*, 39 N.W.2d 636 (Iowa 1949)); *see also State v. Boyer*, 342 N.W.2d 497, 499 (Iowa 1984).

The Hartzler/Wollesen scenario is similar. The jury found Hartzler committed ongoing unlawful conduct that the jury instructions premised on commercial bribery and found the Wollesens did not. At first blush, these findings would appear inconsistent. But, our standard of review in this civil action, the language of the jury instructions, the jury's findings and non-findings, and the evidence the jury considered, lead us to conclude otherwise.

"[W]e review the district court's conclusion as to whether answers are inconsistent for correction of errors at law." *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006). "It is fundamental that a jury's verdicts are to be liberally construed to give effect to the intention of the jury and to harmonize the verdicts if it is possible to do so." *Hoffman v. Nat'l Med. Enters., Inc.*, 442 N.W.2d 123, 126 (Iowa 1989). "The test is whether the verdicts can be reconciled in any reasonable manner consistent with the evidence and its fair inferences, and in light of the instructions of the court." *Id.* at 126-27. "Only where the verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside." *Id.* at 127. "[T]he determination of whether two answers are inconsistent requires the court to consider how the jury could have viewed the evidence and how that view of the evidence fits into the requirements of the instructions or the law applicable to the case." *Clinton*, 714 N.W.2d at 609.

As noted, the jury found that Hartzler committed ongoing unlawful conduct. But the jury left blank the next question asking for a finding that Hartzler committed ongoing unlawful conduct either by "commit[ting] commercial bribery

for financial gain on a continuing basis" or by "[k]nowingly receiv[ing] any proceeds of commercial bribery for financial gain on a continuing basis." We can reasonably infer from the absence of a response to this question that the jury determined Hartzler committed ongoing unlawful conduct by means other than commercial bribery. The instructions read as a whole would have allowed the jury to make such a finding. *See State v. Fintel*, 689 N.W.2d 95, 104 (Iowa 2004) ("Jury instructions are not considered separately; they should be considered as a whole."). While the instruction setting forth the elements of ongoing unlawful conduct referred to commercial bribery, a definitional instruction "relating to [o]ngoing [c]riminal [c]onduct" broadly defined another phrase—"[s]pecified unlawful activity"—as "any act, including any preparatory or completed offense, committed for financial gain on a continuing basis, that is punishable as an indictable offense under the laws of Iowa." The jury could have considered this definitional instruction and reasonably could have found Hartzler's guilty plea to wire fraud rather than commercial bribery was the predicate offense. We conclude the district court did not err in denying Westco's posttrial motion premised on the inconsistency of the verdicts. *See* Iowa R. Civ. P. 1.9034 ("The instructions shall be such as will enable the jury to answer the interrogatories and return the verdict. If both are harmonious, the court shall order the appropriate judgment.").

*C.*       ***Sufficiency of the Evidence – Fraudulent Misrepresentation,***
***Breach of Contract***

Westco contends the district court erred in denying its motion for judgment notwithstanding the verdict on IPF's fraudulent-misrepresentation and breach-of-contract claims. Our review is for correction of errors at law. *See Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 445 (Iowa 2016). We must determine whether substantial evidence supports the elements of each claim. *Id.*

With respect to both claims, Westco argues Hartzler was the person who engaged in fraudulent misrepresentations and breached the contract and his actions could not be attributed to the company. The jury received several instructions on how to decide whether Hartzler had authority to act on Westco's behalf. The first required IPF to prove Hartzler's "conduct was within the scope of his actual or apparent authority." The second stated, in relevant part, that a principal is liable for the acts of its agent only if "[t]he agent was acting within the scope of his employment . . . with respect to the transactions at issue" or "[t]he agent's conduct was within the scope of his actual or apparent authority." A third instruction explained that if "Hartzler's conduct was a substantial deviation from Westco's business or interests, it is outside the scope of his authority."

The jury learned Hartzler was the agronomy manager in charge of the company's sales and marketing efforts. Westco gave him authority to enter into contracts for the sale of chemicals and seed, to price these products, to enter the contracts into Westco's system, to invoice customers, and to apply payments to specific accounts.

Westco knew IPF established its account "on a pre-pay basis"; Bill Wollesen expressly declined a credit application "and said he intended to pre-pay for product." Hartzler applied payments received from IPF to accounts receivable instead of affording IPF a prepayment credit as Bill Wollesen requested. The prices on IPF's monthly statements generated by Westco did not match the prices on Westco's "deal sheets."

Hartzler used a consignment account at Westco to conceal the product he sold IPF. According to West Central's chief executive officer, the account was created for legitimate purposes involving farmers with multiple landlords. Hartzler "abused" the account. Westco's internal auditor found large amounts of IPF products in the consignment account for more than thirty days. She also found multiple below-cost sales to IPF. She was not aware that anyone contacted IPF about these sales. She agreed the access Hartzler had to West Central's sales journals allowed him to invoice IPF for prices that were different than those to which he and the Wollesens agreed. She informed Westco's general manager and supervisor of Hartzler, who realized Hartzler had large balances in consignment for IPF with minimal prepay "to go against that"—"in essence extended $2 million credit."

Westco's comptroller was aware of at least one statement found in Hartzler's office that said "Do Not Mail." He admitted, "We don't know for sure what was sent to the Wollesens." Although Westco's certified credit analyst testified some statements were simply not mailed to customers because there was a zero balance on the account rather than to camouflage illegal activity, it

was the jury's prerogative to weigh this evidence. *See Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 772 (Iowa 2009). Westco's outside auditor informed Westco prior to 2010 that he suspected Hartzler was engaging in fraud.

This evidence amounted to substantial evidence in support of a determination that Hartzler's conduct was within the scope of his employment or was within the scope of his actual or apparent authority. *See Mechanicsville Trust & Sav. Bank v. Hawkeye-Sec. Ins. Co.*, 158 N.W.2d 89, 91 (Iowa 1968) ("The rule is well settled that a principal is responsible for the fraud of his agent if he has entrusted to the agent a matter which puts him in a position to perpetrate the fraud complained of while the agent is executing the transaction within the scope of his employment."). We recognize an exception "where the conduct and dealings of the agent clearly raise a presumption that he would not communicate the fact in controversy." *Id.* at 92. But the jury reasonably could have found Westco possessed enough information to detect the fraud even without Hartzler's disclosure. *See Turner v. Zip Motors*, 65 N.W.2d 427, 430 (Iowa 1954) ("If he was a salesman for defendant, we think further there was substantial evidence he was acting within the apparent scope of his authority in what he did, including the conversion of plaintiff's car by the fraudulent sale. Of course, no one claims the defendant had authorized O'Brien to attempt to defraud the plaintiff by selling his automobile, pocketing the money and absconding. But he was within the apparent scope of his authority nevertheless.").

Having found substantial evidence to support the jury's finding that Hartzler acted within the actual or apparent authority granted by Westco, we

conclude the district court did not err in denying Westco's motion for judgment notwithstanding the verdict on IPF's fraudulent-misrepresentation and breach-of-contract claims.

### III.    IPF's Cross-Appeal

#### A.    Motion for New Trial – Section 706A.2 jury instruction

IPF's claim for ongoing unlawful conduct based on the knowing receipt of proceeds was submitted to the jury.  The district court instructed the jury as follows:

> IPF has alleged that Chad Hartzler committed certain specified unlawful activity.  For Westco to be liable for Chad Hartzler's alleged specified unlawful activity, IPF must prove:
> 1. Chad Hartzler *committed commercial bribery*, and
> 2. Either
>     a. Westco knowingly permitted Chad Hartzler to commit specified unlawful activity and Westco expected to benefit from the specified unlawful activity, or
>     b. Chad Hartzler's committed the specified unlawful activity while acting within the scope of his actual or apparent authority, as defined in Instruction No. 50, and his conduct was authorized, requested, or tolerated by a high managerial agent at Westco.

(Emphasis added.)  The jury found Westco did not engage in ongoing unlawful conduct.  IPF moved for a new trial on the ground that the district court erred in failing to give its proposed instruction on this count.  The district court denied the motion.

On appeal, IPF contends the instruction submitted by the court "erroneously required IPF to prove that Chad Hartzler had committed commercial bribery."  In its view, "This instruction was factually incorrect, as the Wollesens and IPF adamantly testified that Hartzler had not been bribed.  It also was legally

incorrect, as it improperly omitted a number of other offenses (such as theft or fraud) that constitute specified unlawful activity within the meaning of the statute."

IPF preserved error on this claim by offering a proposed instruction. Although the proposed instruction did not identify theft or fraud as the specified unlawful activity, IPF sought an instruction referring to "specified unlawful activity" as defined in a separate instruction. Our review is for correction of errors at law. *See Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016).

We discern no error in the district court's instruction. The instruction required the jury to find Hartzler committed commercial bribery, but the instruction next required a finding that Westco either knowingly permitted Hartzler to engage in "specified unlawful activity" or committed "specified unlawful activity" "while acting within the scope of his actual or apparent authority." Because the instruction tied Westco's knowledge or Hartzler's scope of authority to "specified unlawful activity" rather than commercial bribery, we decline to find the instruction erroneous. We further conclude the instruction, read in conjunction with the remaining instructions, allowed the jury to find that, while Hartzler acted with the actual or apparent authority of Westco in contracting with IPF and in making representations to IPF, he did not act with Westco's authority in engaging in specified unlawful activity. Accordingly, the jury reasonably found that Westco did not engage in ongoing unlawful conduct.

***B.*** *** Summary Judgment Ruling – Constitutionality of Section 706A.2(5)***

IPF contends the district court erred in granting summary judgment in favor of West Central on IPF's statutory negligent empowerment claim. *See* Iowa Code § 706.A.2(5). Section 706A.2(5)(b)(4) states:

> 5. *Negligent empowerment of specified unlawful activity.*
> a. It is unlawful for a person to negligently allow property owned or controlled by the person or services provided by the person, other than legal services, to be used to facilitate specified unlawful activity, whether by entrustment, loan, rent, lease, bailment, or otherwise.
> . . . .
> > *(4) The plaintiff shall carry the burden of proof by a preponderance of the evidence that the specified unlawful activity occurred and was facilitated by the property or services. The defendant shall have the burden of proof by a preponderance of the evidence as to circumstances constituting lack of negligence and on the limitations on damages in this subsection.*

(Emphasis added.)

The district court found subsection four unconstitutional. The court relied on *Hensler v. City of Davenport*, 790 N.W.2d 569, 587-89 (Iowa 2010), dealing with a statute setting forth parental duties following children's involvement in "occurrences" and establishing a rebuttable presumption of negligence after a second "occurrence."

In *Hensler*, the court cited the "well-settled law that in an ordinary negligence action the mere fact an incident occurred does not mean a party is negligent." 790 N.W.2d at 587. The court held, "allowing a fact finder to presume negligence and causation based on the happening of an 'occurrence,'

rather than finding negligence and causation based on the facts, is arbitrary and irrational in light of the multiple factors that can cause the 'occurrence,' as defined by the statute." *Id.* at 588; *see also City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 341 (Iowa 2015) ("In *Hensler*, we considered a substantive due process challenge to an ordinance that imposed a rebuttable presumption that a parent failed to exercise control over a minor child when that child engaged in 'occurrences' that amounted to unlawful acts. We found the rebuttable presumption was arbitrary and irrational in light of the multiple factors that could cause juveniles to engage in behavior contrary to the ordinance." (citation omitted)).

In contrast to the statute involved in *Hensler*, section 706A.2(5)(b)(4) requires the plaintiff to prove the defendant's negligence by a preponderance of the evidence; there is no presumption of negligence. *See* Model Ongoing Criminal Conduct Act § 5(e)(2)(D) (1993).[3] We conclude the provision is constitutional. Accordingly, we reverse the summary judgment ruling on IPF's claim of negligent empowerment and remand for further proceedings.

---

[3] The drafters stated:

> The burden of proof is the standard tort burden, as repeated in Section 6, subsection (c). The burden of proof with respect to lack of negligence and evidence of special defenses is placed on the defendant in conformance with the normal rule that "the burden of proving a fact is put on the party who presumably has peculiar means of knowledge enabling him to prove the fact." 9 J. Wigmore, Evidence 2486, at 275 (3d ed. 1940), *G.E.J. Corp. v. Uranium Aire, Inc.*, 311 F.2d 749, 751 (9th Cir. 1962) (value of ore in mine); *Selma, Rome and Dalton Railroad Co. v. United States*, 139 U.S. 560, 567, 568 (1891) (stating general rule).

*See* Model Ongoing Criminal Conduct Act § 5(e), cmt.

### C.    Adequacy of Damage Award to IPF

IPF filed a posttrial motion requesting "additur of $805,499 to the jury's award of $576,189 . . . for its claims of breach of contract and fraudulent misrepresentation against West Central."  IPF claimed, "The $576,189 amount represents only the additional amounts that IPF paid third parties to procure agronomy supplies in excess of the prices it had contracted to pay West Central.  The amount does not include any of the uncontested prepayment amounts that West Central procured from IPF through fraud."  The district court summarily denied the motion.  Our review is for an abuse of discretion.  *See McHose v. Physician & Clinic Servs., Inc.*, 548 N.W.2d 158, 162 (Iowa Ct. App. 1996).

"A verdict should not be set aside as either too large or too small simply because the reviewing court would have reached a different conclusion."  *Cowan v. Flannery*, 461 N.W.2d 155, 158 (Iowa 1990).  "[W]here the verdict is within a reasonable range as indicated by the evidence the courts should not interfere with what is primarily a jury question."  *Id.*

The jury's verdict was well within the range of evidence.  The jury was instructed it could consider amounts IPF prepaid to Westco.  But nothing in the damage instructions on either the breach-of-contract or fraudulent-misrepresentation counts required the jury to award sums reflecting these prepayments.  To the contrary, the jury was instructed to award only "foreseeable" damages.  The jury reasonably could have found the additional sum IPF requested was not foreseeable, whereas the sum IPF had to expend

following Westco's decision to curtail delivery was foreseeable.  We affirm the district court's denial of IPF's motion for additur.

## IV. *Disposition*

We affirm all aspects of the district court proceedings except the summary judgment ruling finding section 706A.2(5)(b)(4) unconstitutional.  We reverse and remand for further proceedings on that count.

**AFFIRMED ON APPEAL; AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON CROSS-APPEAL.**



IOWA APPELLATE COURTS

State of Iowa Courts

**Case Number**        **Case Title**
15-0471                Westco Agronomy v. Wollesen

Electronically signed on 2016-12-21 08:26:43